## STATE *v.* MITCHELL BLAY.

May Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, and STAFFORD, JJ.

Opinion filed August 31, 1904.

*Criminal Law—Evidence—Confession—Intent—Question for Jury—Reasonable Doubt—Need not Define.*

In a prosecution for horse stealing, when the respondent, after the larceny in question, and before his arrest therefor, and while

under arrest for stealing another horse, voluntarily replied to the officer then in charge of him, in answer to the question why he stole "those horses," that he supposed it was "habit," this statement was admissible, and its effect was properly left to the jury.

In a prosecution for stealing a horse, it is proper to allow the State to show that, at the preliminary hearing before a justice of the peace, where respondent had no counsel, when a complaint for the larceny in question was read to him, he said, "I am guilty of that, sir," it not appearing that he made this statement by way of waiving an examination.

In a prosecution for larceny, extrajudicial confessions, alone and uncorroborated, are insufficient to establish the *corpus delicti*, but slight corroboration may be sufficient to establish it.

When, in a prosecution for stealing a horse, the evidence tends to show that the respondent hired a horse to drive to a particular place, promising to return the same day, that after driving to such place he disposed of the horse, which was never returned, and then left the place by rail; that later he admitted he stole the horse; the question of his felonious intent is for the jury.

In charging a jury in a criminal case, it is not error for the court to omit to define the term "reasonable doubt."

INFORMATION for grand larceny. Plea, not guilty. Trial by jury at the March Term, 1904, Orleans County, *Haselton,* J., presiding. Verdict guilty; judgment and sentence. The respondent excepted.

The exceptions state that in February 1904, when respondent had the talk with the officer which is referred to in the opinion, no complaint or warrant had been issued for the larceny here in question.

*F. E. Miles* and *H. F. Graham* for the respondent.

It was error not to direct a verdict for respondent. No felonious intent was shown to exist at the time of the taking. This is necessary. 1 Bish. Crim. Law, § 207; *State* v. *Smith,* 2 Tyler 272; *People* v. *Call,* 43 Am. Dec. 655; Repalja Larceny, §§ 18-23.

The omission of the court to define reasonable doubt was error. *State* v. *Hopkins*, 56 Vt. 251; *Vaughan* v. *Porter*, 16 Vt. 266.

*A. W. Farman,* State's Attorney, for the State.

The fact that the confession was made to an officer while respondent was in his custody, does not render it involuntary. McKelvey Ev., 117.

The rule is that the *corpus delicti* cannot be shown by confessions alone, but these should be considered with other evidence. Bish. Crim. Proc. Vol. I, § 1058; *Winslow* v. *State*, 70 Ala. 42; *Smith* v. *State*, 17 Neb. 358.

TYLER, J. Information for larceny, trial, conviction and sentence.

It appeared that on October 29, 1900, the respondent hired a horse and wagon at a livery stable in Derby for the professed purpose of driving to the village of Newport, and promised to return the same day; that he drove to Newport, hitched and left the horse there and went by train to St. Johnsbury; that search was made for the property, but it was not recovered, and has never since been seen by the owner.

1. It also appeared that in February, 1904, an officer arrested the respondent upon a warrant for stealing another horse, and the State was permitted to prove under exception, that while he was in custody the officer asked him why he stole these horses, and that he replied that he supposed it was "habit." As the answer was not induced by threats or promises, but was voluntary, it was admissible. *State* v. *Carr and Loomis,* 37 Vt. 191; *State* v. *Gorham,* 67 Vt. 365, 31 Atl. 845. The respondent contends that there was no evidence tending to show what horses were referred to by the officer, but we think it was competent for the jury to decide whether or not,

in the circumstances, the respondent understood that the question included the Derby horse.

2. It appeared that the respondent, soon after his arrest, was taken before a justice of the peace; that he had no counsel and was not advised as to his rights. The State offered and was allowed to prove, subject to exception, that a complaint for this larceny was then read to him, whereupon he said, "I am guilty of that, sir." It does not appear by the exceptions nor by the record that the respondent made this statement by way of waiving an examination, but voluntarily, upon being informed of the charge, therefore it was properly admitted. See *Parker* v. *Couture,* 63 Vt. 449, 21 Atl. 494.

3. The respondent moved for a verdict upon the ground that there was no evidence of a criminal intent. The respondent pretended to hire the horse and wagon to drive to a specified place, yet if he obtained possession thereof under a false pretence of hiring, but with the felonious intention of converting the property to his own use and thereby of permanently depriving the owner of it, the taking was criminal. What his intent was at the time of the taking could be learned only from the fact that the property was never returned, and from his statements made after his arrest, if the jury found that the statements were made. It is the general rule that extra-judicial confessions, alone and uncorroborated, are insufficient to establish the *corpus delicti,* but slight corroboration may be sufficient to establish it. I Bish. Crim. Pro. § 1058; 5 Am. Crim. Law R. 43, 363. In consideration of the fact that the respondent did not return the property and of his alleged admissions, the court properly denied the motion for a verdict.

4. The respondent excepted to the omission of the court to explain to the jury the meaning of the term "reasonable doubt."

In Bish. Crim. Pro. § 1194, it is said, "There are no words plainer than reasonable doubt and none so exact to the idea meant." In the same section the writer says in respect to definitions: "We have not seen one which can safely be pronounced both helpful and accurate." In 23 Am. & Eng. Ency. 955, it is said that attempts to define the term are futile; "that the words are of plain and unmistakable meaning, and that any definition on the part of the court tends only to confuse the jury and to render uncertain an expression which, standing alone, is certain and intelligible." This view is sustained in *Miles* v. *U. S.,* 103 U. S. 312; *Dunbar* v. *U. S.,* 156 U. S. 199. In the former case Mr. Justice Woods remarked, that "attempts to explain the term, · . . . , do not usually result in making it any clearer to the minds of the jury." Mr. Freeman, in his notes to *Burt* v. *State,* 48 Am. St. R. 563, remarks that nearly every attempt to explain the words renders an explanation of the explanation necessary.

Some courts have held that the term should be defined. Numerous cases might be cited where definitions have been considered and approved or held erroneous, but the great weight of authority is that no definition of the term need be given.

*Judgment that there was no error.*