## Foure v. Commonwealth.

(Decided May 18, 1926.)

### Appeal from Rockcastle Circuit Court.

1. Criminal Law—Motion for Change of Venue Because of Public Sentiment Against Defendant Held Sustained by Great Preponderance of Evidence, and Order Overruling it Reversible Error.—Motion for change of venue because of public sentiment rendering fair trial in county impossible held sustained by great preponderance of evidence, and order overruling it reversible error.

2. Criminal Law—Motion for Change of Venue Because of Adverse Public Sentiment is Addressed to Court's Discretion, and Judge's Opinion is Entitled to Much Weight, but Judgment Will be Reversed for Manifest Error.—Motions for change of venue because of public sentiment against defendant are addressed to court's sound discretion, but trial judge's opinion, though entitled to much weight, is subject to review, and judgment will be reversed for manifest error.

3. Criminal Law—Opinion, on Reversal of Codefendant's Conviction of Murder, as to Incompetency of Deceased's Statements as Dying Declarations, Held Not Law of Case on Retrial of Defendant, Whose Conviction of Manslaughter in Separate Trial was Also Reversed.—Opinion, on reversal of conviction of codefendant for murder, that decedent's statements after shooting were incompetent as dying declarations, held not law of case on retrial of defendant, whose conviction of manslaughter in separate trial was also reversed.

4. Homicide—Deceased's Statements that he was Killed and Wanted Some One to Knock Him in Head, or Doctor to Put Him Out of Misery, Held to Render Dying Declarations Admissible.—In manslaughter trial, deceased's statements after shooting that he was killed and wanted some one to knock him in head, or doctor to put him out of his misery, held to render his statements concerning homicide admissible as dying declarations.

5. Criminal Law—Holding, on Former Appeal, that Evidence of Discord in Defendant's Family and Friction Between Him and Another, Because of Defendant's Intimacy with Married Woman, was Admissible, but that Details of Such Intimacy were Incompetent, Held Law of Case.—Holding, on former appeal from conviction of manslaughter, that evidence of discord in defendant's family and friction between him and another, in attempt to kill whom deceased was shot, because of defendant's alleged intimacy with a married woman, was admissible, but that details of such intimacy were immaterial and incompetent, held law of case on retrial.

6. Criminal Law—Questions to Defendant as to Affair with Married Woman Held Improper as Concerning Details of Alleged Intimacy Between them, which were Held Incompetent on Former Appeal.— In manslaughter trial, questions to defendant as to whether he and certain married woman had affair lasting several months, had been sweethearts, and had been keeping company several months before trouble occurred, etc., held improper as concerning details of alleged intimacy between them, which were held incompetent on former appeal.

7. Criminal Law—Defendant's Denial of Statements Attributed to Him and Codefendant at time of Shooting, and His Statement as to Question Asked Codefendant by Third Defendant, Held Admissible as Res Gestae, and Explanatory of Remarks Heard by Commonwealth's Witnesses.—In manslaughter trial, where Commonwealth's witnesses testified that they heard defendant ask codefendant immediately after shooting, "if he got him," and that codefendant responded that he had, defendants' denial of such statements, and his statement that codefendant asked third defendant "if he was shot," were admissible as part of res gestae, as well as to explain remarks heard by such witnesses.

8. Criminal Law—Question to Defendant on Direct Examination as to Whether he Ever Desired to Injure Deceased Held Proper; Intent Being Issue.—In manslaughter trial, question on direct examination of defendant as to whether he ever desired to injure deceased held proper; his intent being issue.

9. Witnesses—Requiring Witness to Testify as to Conviction of Felony Under Same Indictment, Though Appeal was Pending, Held Error (Civil Code of Practice, Section 597).—Requiring witness, convicted under same indictment, to testify that he had been convicted of felony, though appeal was pending in his case, held error; Civil Code of Practice, section 597, authorizing such impeachment, referring to record judgment of conviction, which means final judgment.

10. Criminal Law—Requiring Witness to Testify as to his Conviction of Felony Under Same Indictment Held Prejudicial Error, as Showing that Another Jury had Found Him Guilty of Same Offense Charged to Defendant.—In manslaughter trial, requiring witness, convicted under same indictment, to testify that he had been convicted of felony, held prejudicial error, as showing that another jury had found him guilty of same offense charged to defendant.

11. Homicide.—In manslaughter trial, defense could ask deceased's widow whether he and defendant were on good terms.

12. Witnesses—Cross-Examination of Commonwealth's Witness as to Whether She had Talked to Any One About Case Held Proper, where She Denied Knowledge of Sender of Package of Clothing Received by Her from State in which Deceased's Sister Lived.— Cross-examination of Commonwealth's witness as to whether she had talked to any one about case held proper, where she denied knowledge of sender of package of clothing, received by her just before former trial from another state, in which deceased's sister lived.

13. Witnesses—Cross-Examination of Commonwealth's Witnesses as to Number of Shots Heard and Pistol Flashes seen Held Proper.— In manslaughter trial, it was proper for defendant to ask Commonwealth's witness on cross-examination as to number of shots heard and pistol flashes seen by her.

14. Homicide—If Defendant, or One who Shot Deceased, Believed and had Reasonable Grounds to Believe that Either or Third Person was in Immediate Danger, and it was Necessary or Reasonably Believed Necessary to Shoot, Defendant Must be Acquitted, Though Bullet Struck One Not Intended; but, if One Firing Fatal Shot Brought on Difficulty, Acquittal is Unauthorized.—If defendant, or one he was charged with having aided in shooting deceased, believed and had reasonable grounds to believe that either or third person with them was in immediate danger of death or great bodily harm at hands of deceased or one in attempt to kill whom deceased was shot, and it was necessary or reasonably believed necessary to shoot at either to avert such danger, real or apparent, it is immaterial that bullet struck one not intended, and defendant must be acquitted; but, if one who fired fatal shot brought on difficulty by first shooting when it was unnecessary, and neither he nor defendant had reasonable grounds to believe it necessary to protect any of them from such danger, acquittal is not authorized.

C. C. WILLIAMS and S. D. LEWIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K.. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

In a joint indictment, Matt Foure, William Gillis and Jim Roberts were charged with the murder of Chester Mullins. On separate trials, Gillis was convicted of murder and Foure was convicted of manslaughter. The judgment in each case was reversed by this court. See Gillis v. Commonwealth, 202 Ky. 821, and Foure v. Commonwealth 205 Ky. 66, in which the facts are fully stated.

After filing the mandate of this court upon a reversal of his case, and before entering upon the second trial, appellant Foure filed a motion for a change of venue which was overruled and a trial had in which he was convicted and sentenced to ten years in the state penitentiary.

On this appeal numerous errors of the trial court are alleged and relied upon as grounds for reversal. (1) It is strongly urged that the court erred in overruling the motion for a change of venue. This motion was supported by the affidavits of appellant and sixteen others living in different parts of Rockcastle county, averring that affiants were acquainted with the state of feeling in that county and otherwise showing that he could not obtain a fair trial therein. As opposed to this the Commonwealth introduced twenty-five witnesses who were examined orally before the court. Of these, eight were among those who had made affidavits in favor of appellant on the motion and who upon being introduced by the Commonwealth not only reiterated the statements in their affidavits but stated facts upon which they based their conclusions. Of the remaining seventeen witnesses introduced by the Commonwealth, one, the clerk of the circuit court, testified as to certain records in his office, but was not interrogated on this subject. Another, a justice of the peace, was noncommittal. Three others were in evident doubt, though two of them thought a fair trial could be obtained by securing a jury from another county. One of these, Robert Cox, a prominent merchant and the first witness introduced by the Commonwealth, testified as to his acquaintance and general knowledge of conditions in the county and continued: Q. "State if in your opinion the defendant, Matt Foure, could get a fair and impartial trial of his case in this county?" A. "I don't know." Q. "Do you know of any reason why he could not get a fair trial?" A. "There has been quite a good deal of talk about the case; I can not state posititvely that he could or could not." Q. "State whether or not, Mr. Cox, you have heard of any prejudice and feeling existing in the county against Mr. Foure that would tend to prevent him from getting a fair trial in this county?" A. "I guess there is a lot of prejudice and feeling in the case from what I have heard." Q. "No more than exists in cases of this kind where there is a killing?" A. "There is quite a good deal in my opinion." Q. "Do you think that there will be any likelihood of not getting a fair trial in this county in the event a jury should be summoned

and secured from another county?" A. "I could not state." Q. "To what extent does this feeling exist in the county, and to what extent does that go?" A. "I have heard a good deal of talk on it both ways." Q. "Mr. Cox, in view of the conditions as you understand them in the county, if a jury should be secured from another county, state whether that influence which exists in the county would be likely to influence the case one way or the other?" A. "I could not state." Another, Judge Bowman, the present county judge, who was county clerk for many years and is acquainted all over the county, was asked: Q. "Are you familiar with the conditions of the public mind as to the defendant, Matt Foure, as to whether there is a feeling of prejudice against him?" A. "I cannot say about the whole county; there are sections of the county that are against him." Q. "If the case was tried here in Mt. Vernon and a jury selected outside of the county, do you see any reason he could not get a fair and impartial trial?" A. "No, sir."

On cross-examination by appellant's attorney he was asked: Q. "You have heard a good many people speak about this case?" A. "Yes, sir." Q. "Is it not a fact that the majority you heard speak were antagonistic?" A. "Yes, sir." Q. "The Mullins family is the largest family in the county is it not?" A. "I have heard it said that it is." Q. "The Mullins family is connected with the Owens family is it not?" A. "I think so. . . ." Q. "The whiskey element is earnestly opposed to the defendant, is that not true?" A. "Yes, sir, I have heard a lot to that effect." Q. "Is it not a fact that practically every man he has tried in Livingston while police judge has taken an active part against him?" A. "I know some of them are." Q. "Judge Foure, when he was police judge in Livingston, tried to enforce the liquor law?" A. "That is my understanding."

Of the remaining twelve witnesses introduced for the Commonwealth, it appears that one is the uncle and another a relative of the chief prosecuting witness, while a third was connected with the family of the deceased. It further appears that the Mullins and Owens families are connected and are the two most numerous and perhaps influential families in that county; that Judge Cam Mullins, formerly sheriff and county judge of the county is taking an active part in the prosecution; that the present sheriff and circuit clerk are also conected with that family, though no participation is shown by them; that the

Mullins family is characteristically clannish; that its members are incensed at appellant and attend his trials in large numbers, and manifest their interest in various ways.

It is evident that public sentiment in Rockcastle county is running strongly against this appellant. Whether this is personal prejudice, fomented by his enemies and the relatives of deceased or is the natural expression of indignation occasioned by the crime with which he is charged is in issue. On this point it will be observed that not exceeding one-half of the witnesses introduced by the Commonwealth were willing to state that he could obtain a fair trial before a jury of that county, and that several of the witnesses upholding the contention of the Commonwealth may have been biased in their view by reason of relationship to the deceased and to the chief prosecuting witness. Of the unbiased witnesses introduced by the Commonwealth an equal number testified positively that he could not obtain a fair trial in that county, and these coupled with the affidavits introduced by appellant gave a numerical superiority of two to one in favor of his contention. When this is considered in connection with the doubts expressed by such conservative Commonwealth witnesses as Mr. Cox and Judge Bowman, and the great interest manifested by the numerous relatives of the deceased, living in different parts of the county, and the number of influential men connected with them, together with the hostility manifested by the personal enemies of appellant, it clearly appears that the grounds relied upon by the appellant for a change of venue were sustained by a great preponderance of the evidence, and the order overruling the motion constituted reversible error. True such motions are addressed to the sound discretion of the court and the opinion of the trial judge is entitled to much weight, but this is subject to review, and for a manifest error the judgment will be reversed. Bradley v. Commonwealth, 204 Ky. 635; Allen v. Commonwealth, 168 Ky. 325; Johnson v. Commonwealth, 82 Ky. 116; Bowman v. Commonwealth, 96 Ky. 8; Mount v. Commonwealth, 120 Ky. 398; Shipp v. Commonwealth, 30 Rep. 904; Commonwealth v. Carnes, 125 Ky. 821; Browder v. Commonwealth, 136 Ky. 45; Smith v. Commonwealth, 108 Ky. 53.

As the case must be tried again, a number of other questions raised on this appeal should be determined for the guidance of the court. These apply largely to al-

leged errors of admission and rejection of evidence. In
the Gillis opinion *supra,* it was held that none of the
statements of the deceased, Chester Mullins, made while
he was lying on the ground at the place he was shot and
while being carried home were competent as dying declar-
ations, it appearing on that trial that he was repeatedly
asking for a doctor during that time, thus indicating a
hope of recovery. On this trial the evidence shows that
during this period of time the deceased was repeatedly
saying that he was killed and asking for someone to
knock him in the head or for a doctor to put him out of
his misery, indicating a sense of impending dissolution
and not a hope of recovery, and the court admitted his
statements concerning the homicide. It is earnestly in-
sisted that the Gillis opinion is the law of the case and
that the admission of this evidence is error, but the posi-
tion is untenable. Appellant had a separate trial unaf-
fected by the evidence introduced in the Gillis trial. Each
of these cases stands on its own footing. If the facts de-
veloped are the same in both the same rule of law should
be applied to both, but under a different state of facts it
cannot be said that the opinion of the one is the law of the
case as to the other. We conclude that this evidence was
properly admitted.

In the former opinion in this case, 205 Ky. 66, the
court held that evidence of discord in the Foure family,
and of friction between appellant and John Poynter
caused by the alleged intimacy between appellant and
Mrs. Martin was admissible, but that the details of the
transactions between Foure and Mrs. Martin were
immaterial and incompetent and indicated how far the
Commonwealth could go in this direction, saying:

> "It is the theory of the Commonwealth that ap-
> pellant desired to have Poynter killed because he in-
> terfered in that matter; that the shooting which re-
> sulted in Mullins' death was done by the Foure
> crowd in an attempt to kill Poynter. It was proper
> for the Commonwealth to introduce sufficient evi-
> dence if it could establish that motive for Foure de-
> siring to have Poynter killed, but upon the trial of
> appellant upon the charge of having aided and abet-
> ted the murder of Chester Mullins, it was highly im-
> proper and prejudicial to go into the details or under-
> take to establish the truth or falsity of the rumors

that appellant Foure had been guilty of misconduct with the Martin woman.''

That opinion is the law of this case, but it was manifestly overlooked in the trial below.

On cross-examination of appellant the Commonwealth's attorney properly asked him as to the rumors about his conduct with the Martin woman and the trouble it was causing in his family as well as with the witness, John Poynter; and then over his strenuous objection he was required to answer the following questions: Q. ''Is it not true that this suspicion was well founded? Is it not true that you and this married woman had an affair which lasted several months?'' A. ''You mean me and the woman had an affair together?'' Q. Had you not been sweethearts?'' A. ''I could not say we had been sweethearts, no sir, I don't know what a sweetheart is?'' Q. ''Had you been keeping company with this married woman several months before this trouble occurred?'' A. ''I don't know what you mean by keeping company, I had been in company with several women.'' Q. ''Did you testify here in this court in the trial of Gillis?'' A. ''Yes, sir.'' Q. ''And in that testimony did you not say that you had been too thick with this woman?'' A. ''I did not.'' Q. ''Do you mean to say that you never sustained any relations with this woman that were improper?'' A. ''I say no.'' Q. ''Never did?'' A. ''No, sir.'' Q. ''Were you in love with her?'' A. ''I like the woman.'' Q. ''Were you in love with her?'' A. ''I have been in company with her.'' Q. ''Were you in love with her?'' A. ''I like the woman's company.'' Q. ''I am asking you if you were in love with her?'' A. ''I don't know what love is; no, sir, I can't say I was in love with her; I like the woman's company; she was good company.'' Q. ''Had you kept company with her?'' A. ''She had ridden in my car two or three times and I was in her home when they lived up there.'' Q. ''Was you there when he was not at home?'' A. ''No, sir.'' Obviously these questions were condemned by the former opinion and should not have been permitted.

Several witnesses for the Commonwealth testified that immediately after Mullins was shot they heard Foure ask Gillis ''if he got him,'' or words to that effect, and that Gillis responded that he had, and that Foure laughed. In reference to this Foure denied the statements attributed to him and Gillis at the time, and said

that Gillis asked Roberts "if he was shot." For some unexplained reason the court sustained an objection to this answer. This was manifest error. The appellant and his witnesses should be permitted not only to deny the statement attributed to them by the Commonwealth witnesses, but also to give their version of what was said on that occasion. This is admissible as part of the *res gestae*, as well as to explain the remarks heard by the Commonwealth witnesses, if such remarks were otherwise than claimed by the Commonwealth witnesses.

Again on direct examination appellant was asked: Q. "Did you ever at any time have any wish or desire to do John Poynter or Chester Mullins any injury?" Objection was sustained as to Chester Mullins. No reason is assigned for this ruling, but it is clearly erroneous, as on a charge for murder the intent of the accused is a point in issue.

Gillis had been convicted a second time under this indictment and his appeal was pending at the time of this trial. He was introduced as a witness for defendant and on cross-examination was required to answer that he had been convicted of a felony, although it was shown that an appeal was then pending in his case. While in a proper case a witness may be impeached by asking him as to his being convicted for a felony; here this was error for two reasons: first, the Code provision, section 597, Civil Code, authorizing such impeachment, refers to a judgment of conviction, which of course means the final judgment. Ordinarily this refers to the judgment of the circuit court, but an appeal in a criminal case suspends the judgment, which does not become final until a termination of the appeal. If the witness's case is reversed and on final trial he should be acquitted it will not be contended that on a subsequent trial he could be impeached by showing such conviction, and during the pendency of the appeal it cannot be determined what the final judgment shall be. 2nd. The effect of this evidence was to show that another jury had found Gillis guilty of the same offense here charged, which was quite prejudicial to appellant's substantial rights.

It was proper for the defense to ask the widow of deceased if or not her husband and appellant were on good terms, and the court erred in sustaining an objection to that question.

Sarah Liza Westerfield, an important witness for the Commonwealth, is shown to have received a package of clothing from someone in Knoxville just before the first trial in this case. She denies any knowledge of the sender, though it appears that a sister of deceased lives in that state. On cross-examination this witness was asked if she had talked to anyone about the case. Objection was sustained to that question. We think the court was in error as the attitude of this witness was such as to entitle the defense to cross-examine her, fully.

It was proper for appellant on cross-examination to ask Nila Mullins as to the number of shots she claims to have heard and as to the number of flashes of the pistols that she saw in either direction.

The propriety of a qualification of the self-defense instruction is challenged by appellant, but the former opinion in this and the Gillis case seem determinative of that question. However, instruction 4 is so long and involved that its meaning will not be understood without careful study. If Gillis committed no offense in shooting Mullins, Foure is guilty of no offense in aiding and assisting him therein. On another trial instruction 4 will be given in these words:

"If the jury believe from the evidence that at the time of the shooting of Chester Mullins, the defendant, Foure, or Bill Gillis believed and had reasonable grounds to believe that Foure or Gillis or Jim Roberts was then and there in immediate danger of suffering death or great bodily harm at the hands of Chester Mullins or John Poynter and that it was necessary or was believed by Foure or Gillis in the exercise of a reasonable judgment to be necessary for Gillis to shoot at Chester Mullins or John Poynter in order to avert said danger, real or apparent, then it is not material that the bullet struck a man not intended and you will find the defendant not guilty.

"But if the jury shall believe from the evidence beyond a reasonable doubt that Gillis brought on the difficulty by first shooting at Chester Mullins or John Poynter when it was not necessary and when neither he nor Foure had reasonable grounds to believe it to be necessary to protect Gillis or Foure or Roberts from immediate danger of suffering

death or great bodily harm, then you will not acquit the defendant under this instruction.''

Only the questions discussed in the opinion are considered by the court in this case.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.