STATE OF MAINE

*vs.*

STANLEY CARLETON, WILLARD CARLETON,
RAYMOND CARLETON, JR. AND GEORGE JOHNSON

Knox.    Opinion, October 28, 1952.

*Curtis M. Payson, County Attorney,* for State.

*George W. Wood,* for Stanley and Raymond Carleton.
*A. Alan Crossman,* for Willard Carleton.

SITTING: THAXTER, FELLOWS, MERRILL, NULTY, WILLIAM-
SON, JJ. MURCHIE, C. J., did not sit.

NULTY, J.   This case comes before us on respondents'
bill of exceptions from the November 1951 Term of the
Knox County Superior Court.   The three Carletons named
above were indicted, with one George Johnson who did not
stand trial, at said term on the charge of breaking, entering
and larceny and at the trial at said term were found guilty.
During the course of the trial the respondents excepted to
the introduction of certain evidence in the nature of admis-
sions made by the respondents to the sheriff of the county
and also to the admission in evidence of what is usually
termed an extrajudicial confession in writing of one of the
respondents, namely, Stanley Carleton.   The evidence intro-
duced by the State, which was very brief, consisted of testi-
mony by one George Butler who was the owner of a farm in
Union, Maine, in said County of Knox, and after the usual
preliminary questions which proved that a barn was located
on his farm and that on the date in question, December 3,
1950, he owned certain livestock in the barn.   The evidence
also proved that Mr. Butler did not live on his farm because
his dwelling house had been destroyed by fire and that he
was living in Union about two miles from his farm and that
on the morning of December 3rd he went to his barn to tend
his stock and he discovered that a holstein heifer ten months
of age of the value of $110 was missing and that he has
never recovered the heifer or found her.   He further testi-
fied on redirect examination that the barn doors were not
locked because there was no padlock but that they were
closed and were closed when he came to his barn on the
morning of said December 3, 1950.   The only other witness
for the State was the sheriff of the county, Willard Pease,
who stated that he received a complaint from Mr. Butler
and that he, in company with a deputy sheriff, went, on De-

cember 3, 1950, to the barn of George Butler and made an investigation. He found the ground frozen and no car tracks or finger prints. He further testified that in September of the year 1951, while conducting another investigation, he interrogated the respondents and that after advising them of their constitutional rights he asked them certain questions in regard to the heifer alleged to have belonged to Mr. Butler. At this point the respondents objected to the introduction of any further testimony by way of statements or admissions of the respondents on the ground that until the corpus delicti had been sufficiently proved by either circumstantial or direct evidence, the statements or admissions were not admissible. The court, however, permitted the witness to testify as to the statements or admissions which the respondent, Stanley Carleton, made to him as a result of the questioning and also permitted, over objection of the respondents, the introduction of the confession in writing of Stanley Carleton. The witness was likewise permitted, over objection, to testify as to the statements or admissions which both Willard Carleton and Raymond Carleton, Jr., made to him with respect to the events which happened on the night of December 3, 1950. The statements and written confession would tend to prove, if legally admissible, that the respondents went to the barn of Mr. Butler on the night of December 3, 1950, in the early morning hours and, after entering the barn took the heifer from the barn, shot it and took it to a house where they dressed the animal, removed the hide and the entrails, and disposed of the hide and entrails by throwing the same into a river at Thomaston and subsequently participated in eating, at various times, the meat. At the conclusion of the State's case the respondents moved for a directed verdict which motion was denied and exceptions allowed. A blanket exception was also taken to the charge of the presiding justice which under the authority of *McKown* v.

*Powers,* 86 Me. 291, 296, 29 A. 1079, is ineffectual and cannot be considered. We, therefore, have before us two exceptions, one to the admission of the statements or admissions of the respondents together with the admission of the extrajudicial confession of said Stanley Carleton made to the sheriff, the other, the denial of the motion for a directed verdict. The exceptions, whether considered together or separately, raise the same question of law, that is, whether there was sufficient proof of the corpus delicti so that the extrajudicial confession of one of the respondents or the admissions of the respondents were admissible in evidence to corroborate the corpus delicti. In recent months we have considered the subject of corpus delicti in two cases, *State* v. *Levesque,* 146 Me. 351, 81 A. (2nd) 665, and *State* v. *Hoffses,* 147 Me. 221, 85 A. (2nd) 919. In the *Levesque* case it was determined that there was no proof outside of the confession of the burning of a building which would constitute arson and that, therefore, the extrajudicial confession of the respondent in that case would not establish the corpus delicti. In the *Hoffses* case we laid down the rule as to the proper use of extrajudicial confessions within their limitations and adopted the principle which is generally recognized that extrajudicial confessions are competent evidence to corroborate the proof of corpus delicti and we held in that case that the evidence which will qualify an extrajudicial confession for admission in corroboration need not establish the corpus delicti beyond a reasonable doubt but is sufficient if, when considered therewith, it so satisfies the jury "that the offense was committed and that the defendant committed it." We also called attention to a statement found in Wharton's Criminal Evidence, 11th Ed., Sec. 641, wherein the author declared that additional evidence would be sufficient to authorize the admission of a confession if such additional evidence established the corpus delicti to a probability. We think a proper interpretation of

this quotation from Wharton means that to establish the corpus delicti to a probability the evidence introduced must be such that a reasonable inference of the existence of the corpus delicti may be deduced therefrom without reliance to the slightest degree upon the confession. As said in *Marvin v. State,* 72 So. 588, 15 Ala. App. 5:

> "Where evidence is introduced from which a reasonable inference of the existence of the corpus delicti may be deduced, it is the duty of the court to submit the question of the sufficiency and weight of the evidence tending to support that inference to the jury, and this is sufficient proof of the corpus delicti to permit the introduction of a confession of the defendant. Martin v. State, 125 Ala. 64, 28 South. 92; Smith v. State, 133 Ala. 145, 31 South. 806, 91 Am. St. Rep. 21."

In the *Hoffses* case there was ample evidence outside of the confession or admission to make the extrajudicial confession and admission admissible within the aforesaid rules with respect to corroborative proof of the corpus delicti.

Measured by those rules, however, the evidence in this case, dehors the confession and admissions, was insufficient to either establish the corpus delicti to a probability or to create a reasonable inference of its existence.

In the instant case such evidence of the corpus delicti is very meager. It may be summed up by stating that on the morning of December 3, 1950, Mr. Butler went to his barn, the doors of which were unlocked, but closed, and discovered that a heifer was missing. The fact that the heifer was missing may create a suspicion that someone was guilty of the crime of breaking, entering and larceny, but, as we said in *State of Maine* v. *Caliendo,* 136 Me. 169, 175, 4 A. (2nd) 837:

> " * * * mere suspicion, however strong, will not supply the place of evidence and warrant a conviction."

Two distinct propositions are necessary to prove a crime, first, that the act itself was done, and secondly, that it was done by the person charged and by none other; in other words, proof of the corpus delicti and of the identity of the respondent. There is no question but what before a lawful conviction can be had the crime charged must be proved to have been committed by someone. The only evidence of the felonious taking in this case is the fact that the heifer was missing. None of the respondents, as a result of any investigation other than through their admissions or confession, are placed at any time at or near the premises where the barn was located. There must be factual evidence, either cricumstantial or positive, which would tend to prove the corpus delicti before confessions or admissions are admitted in evidence. Another way of stating it is, there must be such extrinsic corroborative evidence of the corpus delicti as will, when taken in connection with the confessions or admissions, establish in the minds of the jury beyond a reasonable doubt that the crime was committed and the respondents' agency therein. See *State* v. *Jacobs*, 21 R. I., 259, 261, 43 A. 31. Whether there was sufficient evidence to establish the corpus delicti so that the case should have been sent to the jury in the first instance is for the court and in the instant case we do not think that there was sufficient proof of the corpus delicti so that as a matter of law on the record in the case the confessions or admissions of the respondents were admissible. The authorities make it clear that the underlying reasons for the doctrine of corpus delicti and the proper use of extrajudicial confessions and admissions rests in the desire to safeguard against the possibility of a conviction for an alleged crime not in fact committed. It would seem that except for the confessions or admissions, the facts proved are not inconsistent with the innocence of the accused, and, such being the case, they must be as consistent with innocence as with guilt.

No felonious taking which is necessary to the crime of larceny appears to be sufficiently proved in the case at bar. It follows that the extrajudicial confession and the admissions of the respondents on the record in this case were not admissible and the exceptions are sustained upon this ground. It necessarily follows also that under the view we take of the proof of the corpus delicti it was error not to direct a verdict for the respondents.

*Exceptions sustained.*

*Verdict set aside.*

*New trial ordered.*