## SOLAR v. UNITED STATES.
### No. 1283.

Municipal Court of Appeals for the
District of Columbia.

Argued Dec. 15, 1952.

Decided Jan. 21, 1953.

See also 86 A.2d 538.

Myer Koonin, Washington, D. C., with whom Robert C. Chalfonte, Washington, D. C., was on the brief, for appellant.

Paul F. Leonard, Asst. U. S. Atty., Washington, D. C., with whom Charles M. Irelan, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. William R. Glendon, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

This is an appeal from a conviction of negligent homicide.[1] The accident occurred in the intersection of 12th and P Streets, Northwest. Appellant was driving east on P Street and a taxicab was proceeding south on 12th Street. Appellant's car struck the right rear of the taxicab and the collision forced the taxicab into a spin and across the intersection. A three-year old child who was standing on the curb at the southeast corner of the intersection was pinned between the rear of the taxicab and a tree and crushed to death.

The first error assigned is the refusal of the trial court to grant appellant's motion for judgment of acquittal. It is argued that the evidence did not warrant submission of the case to the jury. This argument asserts that there was no evidence that appellant operated his car at an immoderate rate of speed, that to establish that appellant operated his car in a careless, reckless, or negligent manner the Government attempted to prove that appellant drove into the intersection without stopping at a stop sign, and that evidence of failure to stop at the stop sign was insufficient.

Appellant did not testify, but a police officer testified that shortly after the accident appellant stated he did not see the stop sign, did not see the taxicab until an instant before the collision and did not have a chance to apply his brakes. Thomas, the driver of the taxicab, testified he heard appellant tell the officer he did not stop at the stop sign. Appellant argues that there can be no conviction upon an uncorroborated extrajudicial confession and that the required corroboration was lacking.

In Ercoli v. United States, 76 U.S.App.D.C. 360, 362, 363, 131 F.2d 354, 356, 357, it was held "that (1) there can be no conviction of an accused person in a criminal case upon an uncorroborated extrajudicial confession; (2) such corroboration is not sufficient if it tends merely to support the confession without also embracing substantial evidence touching and tending to prove each of the main elements or constituent parts of the corpus delicti; (3) however, such corroborating evidence need not, independent of the confession, establish the corpus delicti beyond a reasonable doubt; (4) if there is substantial evidence of the corpus delicti, independent of the confession, and the two, together, are convincing beyond a reasonable doubt of a defendant's guilt, that is sufficient."

It was also said in the Ercoli case that the elements of the corpus delicti of negligent homicide are (1) the death of a human being, (2) by the instrumentality of a motor vehicle, (3) operated at an immoderate rate of speed or in a careless, reckless, or negligent manner, but not wilfully or wantonly.

Appellant concedes that the first two elements were proved, but contends that the third element was not established by substantial corroborating evidence independent of his extrajudicial admissions. The Government's case appears to have

---

1. "Any person who, by the operation of any vehicle at an immoderate rate of speed or in a careless, reckless, or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor, and shall be punished by imprisonment for not more than one year or by a fine of not more than $1,000 or both." Code 1951, § 40-606.

been predicated on appellant's alleged operation of his vehicle in a careless, reckless, or negligent manner in failing to observe and obey the stop sign. Thus our question is whether, independent of appellant's admissions, there was substantial evidence that appellant failed to stop at the stop sign. The taxicab driver, Thomas, testified that he saw appellant approaching the intersection and that he did not see appellant's car stop at the stop sign; that he kept appellant's car under observation until he (Thomas) entered the intersection, that he knew appellant's car did not stop because he could see the car moving; and that appellant's car struck the taxicab on the rear fender and right rear door and knocked it over to the southeast corner of the intersection with its rear against the tree and its front facing P Street. Appellant argues that Thomas testified only that he did not see the car stop and did not directly testify that the car failed to stop at the stop sign. Even if there be any merit to this argument, it does not help appellant, because circumstantial as well as direct evidence may supply sufficient corroboration of the corpus delicti. Ercoli v. United States, supra.

There was additional testimony from other witnesses tending to establish that appellant did not stop. The officer testified that appellant's car was damaged at the front and the taxicab damaged from the right rear door to the back; that both P and 12th Streets are 31 feet wide at the intersection and the stop sign is about 26 feet west of the southwest corner. The positions of the cars after the accident were established by a number of witnesses, including three pedestrians who were knocked to the ground on the southeast corner. From this testimony and that of Thomas, the jury could reasonably have inferred that appellant's car did not stop at the stop sign, since it is highly improbable that an automobile, after coming to a full stop, would within a space of slightly more than 26 feet attain such speed that on striking another car both cars would be forced across a 31 foot street onto the opposite curb. Furthermore, Thomas testified that when he entered the

intersection appellant had not then reached the stop sign. This testimony alone furnished a reasonable basis for the inference that appellant did not stop, because had he stopped before proceeding into the intersection, there would have been ample time for the taxicab to have cleared the intersection before appellant reached the point of the impact. It is our opinion that there was substantial evidence of the corpus delicti, independent of the confession, and that the motion for judgment of acquittal was properly denied.

The next claimed error relates to a ruling of the trial court in the course of cross-examination by appellant of the Government witness Thomas. After Thomas had been cross-examined at some length and after his attention had been called to certain alleged discrepancies between his testimony in this trial and that given by him at a previous trial of the same case, there occurred the following questions and answers:

"Q. Now, Mr. Thomas, when was the last time you discussed this case with the Assistant District Attorney? A. This morning, the first time I talked to them since the—

"Q. And did you go over the facts in this case with them? A. Well, I—they just—I was just in the office.

"Q. You were just in the office? A. I didn't go over the entire case with them.

"Q. Did you talk to them about this case? A. Yes."

At this point Government counsel objected, saying:

"I submit, your Honor please, that this has no value at all. It's his duty and mine to confer with one another, and if I talk with him from now until Doomsday, it's a right and a prerogative of mine that the jury must know, and there is no inference to be drawn."

Following some colloquy between counsel, the court, after remarking, "It's just one of those old trick questions," instructed the jury:

"Please disregard the question whether he talked to the District Attorney

or the Assistants or the witnesses this morning or any other time, because he has a perfect right to talk to them at all times, and that right is afforded also to the defense counsel. They can speak to their witnesses. That's how they prepare cases, speaking to them; and if there is any prior proceeding on that, the Government has a right to refresh their recollection of the case."

The remark of the trial court that defense counsel's question was a "trick question" was unfortunate and uncalled for. It is true that some writers have characterized the broad question, "to whom have you talked about this case," as a trick question,[2] but the statement of the trial judge might conceivably have led the jury to believe that the question was improper and that defense counsel was guilty of unfair conduct. We know of no authority, judicial or otherwise, which questions the propriety of such a question. The trial judge realized his error and in his charge to the jury instructed them to disregard his use of the term "trick." Assuming that the trial judge thereby eliminated any prejudice against appellant resulting from his remark as to the character of the question, there remains the fact that the trial judge told the jury to disregard both question and answer with respect to whether the witness had conferred with the prosecuting attorney, and in his charge to the jury he adhered to this ruling.

Although the authorities are not numerous, all we have found unanimously agree that it is proper on cross-examination, in either a criminal or civil case, to ask the witness to whom he has talked about the case.[3] Therefore we think it was error for the trial court to instruct the jury to disregard the question and answer. Government counsel and the trial court apparently were under the impression that the question in some way reflected upon the office of the District Attorney. Of course, counsel for the prosecution and counsel for the defense had not only the right but also the duty to interview their witnesses in preparation for trial, and it would be error to suggest that any impropriety attached to such conduct.[4] However, the purpose of the question was not to cast any aspersion on counsel but to test the reliability of witness's recollection of the facts to which he had testified. The purpose of such a question was well stated in Boulden v. State, 102 Ala. 78, 15 So. 341, 343, where it was said:

"It is common, and we think allowable, practice to inquire of witnesses, on cross-examination, if they have talked with others in reference to the facts of the case; not as a means of impeaching the character of the witness, but of testing the accuracy or reliability of his recollection. If a witness' memory has been refreshed before going on the stand by having the facts rehearsed to him by others, we think the jury ought to know it, that they may consider it for what it appears to be worth in determining how far the recollection of the witness is reliable."

It is argued by the Government that the action of the court was justified under the well-recognized power of a trial court to exercise its discretion in limiting and controlling the extent of cross-examination. However, the distinction between limitation and denial of cross-examination must be recognized.[5] The trial court may not "cut off in limine all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination." Alford v. United States, 282 U.S. 687, 694,

2. Goldstein, Trial Technique, § 572; Schweitzer, Trial Guide 1325.

3. Love v. State, 31 Ala.App. 584, 20 So.2d 874, certiorari denied, 246 Ala. 468, 20 So.2d 876; Lakey v. State, 20 Ala.App. 78, 101 So. 537, certiorari denied 211 Ala. 615, 101 So. 541; Banks v. State, Ala.Sup., 39 So. 921; Foure v. Commonwealth, 214 Ky. 620, 283 S.W. 958;

Stotts v. Wagner, 135 Or. 243, 295 P. 497; Forney v. Ferrell, 4 W.Va. 729; 70 C.J., Witnesses, § 1017.

4. United States v. Spagnuolo, 2 Cir., 168 F.2d 768, certiorari denied 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378; Mathews v. State, Fla., 44 So.2d 664.

5. Lindsey v. United States, 77 U.S.App. D.C. 1, 133 F.2d 368.

51 S.Ct. 218, 75 L.Ed. 624. The defense had a right to inquire if the witness was testifying from his independent recollection or from a recollection recently refreshed—and if so to what extent—by a talk with someone in the District Attorney's office. The effect of the court's ruling was not to limit this right but to deny it.

Finally, it is argued that the error was not so prejudicial as to require a reversal of an otherwise valid judgment of conviction. The rule is well established that harmless error in the exclusion of evidence does not call for a reversal,[6] but the harmless error rule so easily stated in general terms is not so easily applied to particular cases.[7] Its application in the case before us requires us to attempt to determine what effect the wrongfully excluded evidence would have had on the minds of the jury if it had been received.

Thomas was the chief witness for the Government. His taxicab was struck by appellant's car and it was his taxicab which struck and killed the child. It was natural that he would attempt to place all blame on appellant. Partly because of a previous trial followed by an appeal,[8] the present trial took place nearly two years after commission of the alleged crime. The witness's recollection of some details could possibly have been faulty. Defense counsel attempted to show that the witness's testimony in some respects varied from his testimony at the first trial. It was then that defense counsel sought to inquire when the witness had last discussed the case with the assistant district attorney and the nature and extent of that discussion. We think the action of the trial court in telling the jury to disregard the question and answer was not only error but was also prejudicial error. As we have said, the Government's case rested largely on the testimony of this witness. Obviously his credibility was of vital importance in the case. We think appellant had the right to show or attempt to show

that witness's recollection was hazy and had been refreshed by conference with the prosecuting attorney's office. In other words, appellant had the right by this means to test the accuracy and reliability of witness's recollection and had the right to have the jury consider any facts thus brought out that might have bearing on the credibility of the witness. We cannot say with certainty that the denial of this right was harmless error and the doubt ought to be resolved in appellant's favor.

Reversed with instructions to grant a new trial.

---

6. Morris v. District of Columbia, 75 U.S. App.D.C. 82, 124 F.2d 284.

7. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

8. See Solar v. United States, D.C.Mun. App., 86 A.2d 538.