STATE OF MAINE
*vs.*
HAROLD W. JONES

Knox.   Opinion, October 13, 1954.

*Curtis Payson,* for plaintiff.

*Edward W. Bridgham,* for defendant.

SITTING: WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ. THAXTER, A. R. J., FELLOWS, C. J., did not sit.

TIRRELL, J.   This case is before us on respondent's exceptions to the failure of the presiding justice at *nisi prius* to direct a verdict for the defendant for the reason that the State had not established a *corpus delicti.* The facts as we understand them from a reading of the transcript of testimony are as follows:

The testimony disclosed that on February 2, 1954, at the intersection of Broadway and Masonic Streets, in the City of Rockland, at approximately 5:50 p.m. a motor vehicle was observed off the road with its front end against a tree. A witness testified that he came upon the situation at the above stated time, and as he approached the scene he observed two cars stopped, one of them being the motor vehicle which has been described as being off the road against a tree. The second motor vehicle was apparently on the road, and before he could reach the scene where this was taking place, the second motor vehicle drove off. The witness testified that when he did reach the scene, after he had been there a moment or two, an individual whom he identified as the respondent, came to the right-hand door of the witness's car and said something about wishing to be pushed out of the spot he was in so that he could get out into the road. There was other testimony from a police officer, Maurice H. Benner, who testified that in response to a contact made by the witness Perry, he went to the scene of the accident, arriving there at approximately six o'clock, where he found the motor vehicle off the road at the intersection of Broadway and Masonic Streets against a tree. When the officer arrived there was no one at the scene of the accident, and shortly after the officer arrived he testified

that he saw a man, later identified as the respondent, coming up the street approximately fifty (50) feet away.

There was no issue raised as to the question of the condition of the respondent, as there was sufficient evidence upon which the jury was justified in finding that the respondent was under the influence of intoxicating liquor. The main issue relied upon by the respondent was whether or not he, the respondent, had been operating the car at any time prior to its leaving the road. A further issue was raised as to whether or not extra-judicial admissions made by the respondent, after he appeared on the scene, were properly admitted into evidence for the purpose of proving operation. There is further issue as to the failure of the presiding justice to rule upon a motion for a directed verdict made by the respondent at the close of the State's case and the granting to the State the right to re-open and introduce additional evidence after the respondent had rested and made his motion. We do not deem it necessary in this particular case to rule upon the issue as to whether or not the presiding justice erred in permitting the State to introduce further evidence after having refused to direct a verdict on motion of the respondent at the time the State first closed its case.

The respondent was charged by virtue of a complaint and warrant issued by the Rockland Municipal Court charging the respondent with illegal operation of an automobile on February 2, 1954. The alleged crime as set forth in the complaint is the operation of an automobile on that date, to wit: February 2, 1954, while he, the respondent, was then and there under the influence of intoxicating liquor.

On reading the testimony it appears that the main exception of the respondent is the failure of the presiding justice to direct a verdict in favor of the respondent. The respondent's first exception relates to the admission of certain statements alleged to have been made by the respondent in the

nature of extra-judicial admissions or confessions. The respondent objected to their admission on the ground that no proof of *corpus delicti* had been established by the State up to that time by evidence independent of the respondent's statements sufficient to create a reasonable probability that a crime had been committed so as to warrant the admission of the respondent's statements as corroboration of the *corpus delicti*. This court has ruled very recently on the law relating to this problem and the position of our law is now fairly well established. *State* v. *Robert Levesque,* 146 Me. 351. In that case, which was the first in many years, the court reviewed the authorities on the question of when the admission of a respondent became proper evidence in proof of the commission of the crime, and concluded that:

"It is necessary to establish by some proof, independent of extra-judicial statements or confessions, that some portion of the building was burned or ignited in the slightest degree in order to sustain the burden of proof that a respondent is guilty beyond a reasonable doubt."

The court also indicated that before these admissions were admissible there must be *some* independent evidence of *corpus delicti* but did not further indicate the volume or quality of evidence necessary to constitute *some* evidence. The court clearly indicated that there was no variance upon the issue that the *corpus delicti* cannot be established by the extra-judicial confession of respondent unsupported by other evidence.

In January 1952 this court undertook to apply the rule in the Levesque case and further evaluate the nature of what constitutes *some* evidence of a *corpus delicti. State* v. *Hoffses,* 147 Me. 221. In the *Hoffses* case, as in the case at bar, the admissions of the respondent were introduced for the purpose of proving operation of the motor vehicle by the respondent. The first element that the crime of operating a motor vehicle while under the influence of intoxicating

liquor was the issue for determination on the basis of whether there was some independent proof of this essential element. There the court found that the testimony disclosed such evidence although not to the degree of proof beyond a reasonable doubt of the *corpus delicti*, but sufficient to prove that the crime was real and not imaginary. We know the *Hoffses* case established a measure of *some* evidence as held in the *Levesque* case to be such credible evidence as standing alone to create a really substantial belief that a crime had actually been committed.

We adopt the *Hoffses* case as a substantial finding relative to what constitutes sufficient evidence to warrant the introduction of admissions in a driving-under-the-influence case. It is interesting to consider the elements which were established in the *Hoffses* case with the elements established in the case at bar. The cases are not similar. In the *Hoffses* case the overturning of the motor vehicle was observed by a witness looking out of the window of a house nearby and that witness went to the scene promptly, and when he reached the scene the respondent was standing in front of the truck and within a few feet of it. In the present case there is absolutely no evidence of when the car, alleged to have been operated by the respondent, went off the road, and the only testimony is that the witness Perry a short time before 6:00 o'clock in the evening came upon the scene and found two cars stopped, one of which apparently was in trouble.

From the testimony it cannot be said as to when the car left the road. From all that appears of record it might have been minutes or hours before the arrival of the witness Perry. The *Hoffses* case and the present case are similar to the extent that the State had shown an accident and no more. Admittedly there were other persons at the scene of the accident who were seen as soon as the respondent was seen but the other car was driven off before the first

witness arrived, and admittedly someone must have driven off in the other vehicle. None of the other elements that were present in the *Hoffses* case are present here.

The entire case of the State is based upon conjecture, suspicion and guess. It is just as probable to assume that the car had been a long time off the main travelled highway before having been discovered by any person and it is just as probable to assume that the respondent became intoxicated of his own volition after the car had left the road and before he attempted in any manner to operate the motor vehicle. The State's case is absolutely void of any evidence to connect the operation of the automobile with the respondent on that day and surely upon the presentation of the entire case of the State there was not one iota of evidence to connect the respondent with the operation of the automobile while he was under the influence of intoxicating liquor.

> "To justify a conviction on circumstantial evidence alone, the circumstances must point to the respondent's guilt and be inconsistent with any other reasonable hypothesis. *State* v. *Murray,* 136 Me. 243. The principal facts in a criminal case must be consistent with each other. They must point to the guilt of the accused and they must be inconsistent with his innocence. Guesswork is not the moral certainty of guilt that the law requires. Conjecture, surmise, and suspicion do not constitute proof beyond a reasonable doubt. *State* v. *Morton,* 142 Me. 254." *State* v. *DeBery,* 150 Me. 38, at page 40.

A verdict in favor of the respondent after the presentation of the State's entire case should have been directed. The entry therefore shall be

*Exceptions sustained.*