STATE OF MAINE
*vs.*
HENRY P. McPHEE

Franklin.   Opinion, June 16, 1955.

*Joseph F. Holman,* for State.

*John A. Platz,* for respondent.

SITTING:  FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ.

TIRRELL, J.   On exceptions.   The respondent was indicted for violation of Section 88 of the 11th Biennial Revisions of the Inland Fish and Game Laws, which provides as follows:

"If any person leaves the woods without taking a
deer which he has killed with him, he shall notify
a warden in writing within 12 hours as to loca-
tion of the deer and the circumstances necessitat-
ing his leaving the same in the woods."

The substance of the testimony of the witnesses for the
State is that on *November 11, 1953* a dead deer was found
lying in the woods at Eustis, Maine. The witnesses knew
nothing of the circumstances surrounding the particular
deer and the killing thereof.

On *November 15, 1953* the evidence introduced is that the
respondent appeared at the home of Horace E. Crocker, a
game warden. On this date Mr. Crocker learned for the
first time from the respondent that he had been hunting in
the woods at Eustis. The admissions of the respondent were
allowed in evidence over objections of counsel for the re-
spondent and to which exceptions were duly taken and
noted.

Horace E. Crocker, witness for the State, upon direct ex-
amination was asked the following questions relative to his
conversation with the respondent, to wit:

Q. What day?
A. That was on Sunday.

Q. What—that would be what date?
A. About the 15th.

Q. What did Mr. McPhee say to you?

Counsel for respondent objected to the admissibility of
any admission of the respondent on the basis that no corpus
delicti had been established. The court allowed the witness
to answer, which he did, as follows:

A. He said he understood I had his deer. I
showed him the deer. He looked it all over
and recognized it as his deer.

The respondent took exception and the same was duly noted.

Crocker, upon direct examination, was asked the following question:

> Q. What time, and first of all, did he tell you what day he shot the deer?

Counsel for respondent objected, and seasonably excepted, to the admissibility of any admission of the respondent on the basis that no corpus delicti had been established. The court allowed the witness to answer, and he did, as follows:

> A. Yes.
>
> Q. What day?
> A. November 11th.

At the conclusion of the State's case the defense rested, and moved the court to direct a verdict for the respondent on the ground that the State had failed to prove the offense with which the respondent was charged. Respondent claimed the State's case, at best, was based on circumstantial evidence which could not be relied upon because it was not consistent with the sole conclusion of respondent's guilt and inconsistent with a rational hypothesis of innocence. The presiding justice denied the respondent's motion for a directed verdict of not guilty.

To the ruling of the presiding justice refusing to grant the motion for a directed verdict of not guilty, and refusing to exclude respondent's admission, the respondent, claiming to be prejudiced and aggrieved thereby, excepted and prayed that his exceptions be allowed. The verdict of the jury was *guilty*.

The third exception of the respondent as to the denial of his motion that a verdict be directed is predicated upon the basis that no crime was established by the evidence. In a prosecution such as the one in the present case, the State must offer evidence with respect to each element of the crime, namely (1) the killing of a deer, (2) leaving the

woods without taking the deer, and (3) notification in writing to a warden within 12 hours after leaving the woods, etc. Failure of proof relative to all or any one of the requisite elements is fatal and will not warrant a conviction.

Any statement by the respondent was not admissible until some evidence independent of such extra-judicial admission or confession had been legally admitted. The meaning of "some evidence" has been held to be such credible evidence as, standing alone, will create a really substantial belief that a crime had actually been committed. The entire case of the State is based upon conjecture, suspicion and guess. For reference as to the establishment of a corpus delicti, extra-judicial admissions or confessions see *State* v. *Jones,* 150 Me. 242; *State v. Hoffses,* 147 Me. 221. See also *State* v. *Morton,* 142 Me. 254, the opinion of this court having been written by Mr. Justice Fellows, now Mr. Chief Justice Fellows.

After the State had rested its case and the respondent likewise, a motion was made to the presiding justice by the respondent that a verdict be directed in his favor. This motion the presiding justice denied and the respondent seasonably excepted thereto.

It sometimes happens that requirements placed upon the State as to proof seem very burdensome, but that does not mean they can be dispensed with. This is especially apt to be true when the State has little or no evidence of an unlawful act other than by the admission of the respondent. The State would have had no difficulty if it had had *direct* evidence of respondent's killing and leaving the deer and leaving the woods. In enforcing the requirement of proof of corpus delicti before admissions are received, we are in fact holding the line against proof of crime by admissions alone, however obtained. Such a rule is bound to protect some guilty people, but it is justified in that it also *protects the innocent.* Hindsight is better than foresight and we must

not judge the sufficiency of proof by the corpus delicti in the light of what is subsequently disclosed by the admission.

There is not a scintilla of evidence that respondent left the woods at any time or for any period. The wardens inspected the deer and left. They did not inspect the area near the deer even within a 100 foot radius. There is no description in the record of the area or the nature and extent of the woods. The Legislature could easily have made the offense "leaving the deer" or "leaving the deer untagged," but it did not do so. It made the offense "leaving the woods." The State argued orally that the motive one might have for leaving a deer might be that because the deer was small, one might prefer to hunt for a better one. This is quite probable, and if so, it would lead to the conclusion that the respondent would *not* depart from the woods but would *stay* in the woods hunting the larger deer. If respondent had had a camp 200 yards from the deer, there is nothing in the record to indicate that the wardens would have known it. They made no search or examination of the area and had no knowledge as to who was in the woods or where they might be. Respondent admitted killing the deer on November 11th, and no more. He did not admit leaving the woods and for aught that appears to the contrary might have come from the woods an hour before going to the warden's to claim his deer. Obviously respondent had no sense of wrong doing else he would not have disclosed his identity. This may have stemmed from his ignorance of the law or it may have stemmed from his knowledge that he had not left the woods. This alternative must be resolved by the presumption in favor of the respondent. He admitted a lawful act but not an unlawful one. After the admission was received, the State had still failed to prove beyond a reasonable doubt or even to offer any evidence at all that respondent "left the woods" for twelve hours without reporting.

With the time of leaving the woods established, the burden of proving that notice was given within the twelve hour period would be upon the respondent. To require the State to prove that a notice was not received by any warden in the State would be placing an impossible burden on the State. Compare absence of license—a negative fact. See 20 Am. Jur., Evidence, Sec. 150; 153 A. L. R., 1250; Underhill Criminal Evidence (3rd Ed.), Sec. 52. Defendant relying on license for sale of liquor has burden of proof. See *State* v. *Woodward,* 34 Me. 293; *State* v. *Crowell,* 25 Me. 171; *State* v. *Churchill,* 25 Me. 306; *State* v. *Webber,* 125 Me. 319; Lawrence Digest, Criminal Process (19).

Whether there was sufficient evidence to establish the corpus delicti so that the case should have been sent to the jury in the first instance is for the court. However in the instant case it is our opinion that there *was not sufficient proof* of the corpus delicti as a matter of law to render the admission of the respondent admissible. It necessarily follows that the extra judicial confession or the admissions of the respondent against his interest were not admissible and the exceptions are sustained. Such being the case under the view we take of the proof of the corpus delicti, it was error not to direct a verdict for the respondent. See *State* v. *Carleton,* 148 Me. 237.

The entry therefore must be

*Exceptions sustained.*

*Verdict set aside.*

*New trial ordered.*