STATE OF MAINE

*vs.*

A. ALDEN WOODWORTH

Androscoggin.   Opinion, September 27, 1955.

*Edward J. Beauchamp,*
*Irving Isaacson,* for State.

*Frank M. Coffin,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, BELIVEAU, TAPLEY, JJ. WEBBER, J., did not sit. MR. JUSTICE TIRRELL sat at time of argument and took part in conferences, but died before writing of opinion.

TAPLEY, J. On exceptions. The respondent, A. Alden Woodworth, was tried for the crime of embezzlement before a drawn jury at the January Term, 1954 of the Superior Court for the County of Androscoggin and State of Maine. The jury returned a verdict of guilty and the respondent was sentenced to not less than one year nor more than two years in the Maine State Prison. The indictment upon which the prosecution was based contained seven separate counts alleging embezzlement. The respondent was Superintendent of Schools in the City of Lewiston, Maine from March 21, 1938 to October 1, 1953. The city conducted an evening school program for which a charge was made to resident students of $1.00 for each course taken and to nonresident students $5.00 per course was charged. The prescribed procedure was that the student paid his tuition to his teacher. The teacher in turn delivered the money collected to the principal of the Lewiston High School who then made delivery of this money to the respondent. The amount of cash turned over by the principal of the high school to the respondent over a period of time amounted to $2083.92.

It was the established accounting procedure of the City of Lewiston that department heads, such as the respondent, were to deposit all revenue from the departments with the City Treasurer.

Although the record discloses a plea of not guilty, the respondent interposed the defense of not being guilty be-

cause at the time of the commission of the crime he was legally insane. The respondent during the course of the trial took exceptions to the admissibility of testimony and to the refusal of the presiding justice to direct a verdict of not guilty. He also attacked the sufficiency of the indictment. The objection was not made until the case reached this court.

Testimony of the State shows that Woodworth was appointed Superintendent of Schools in 1943; that Linwood Kelley, as Principal of the Lewiston High School, turned over to Woodworth a total sum of $2083.92 which Woodworth accepted in his capacity as Superintendent of Schools. This sum of money represented evening school tuitions that came into the hands of Kelley in his position as Principal of Lewiston High School. There are exhibits in the nature of receipts signed by Woodworth for this money acknowledging Woodworth's acceptance, not only of the money, but for the purpose for which it was paid. The only evidence disclosing that any amount of this money had been deposited with the City Treasurer of Lewiston was that of the sum of $240.00 paid December 12, 1949 as tuition, first having been received by Woodworth. Woodworth had been accepting these payments for the period from 1949 to 1953. By this one payment of $240.00 he acknowledged a duty to pay money received by him for tuition to the City Treasurer. It can reasonably be inferred from these facts that Woodworth intended a conversion of these funds to his own use and that these facts constitute the *corpus delicti* providing for acceptance of admissions of the respondent.

## EXCEPTION 1.

Linwood Kelley, Principal of Lewiston High School, was called as a witness for the State and testified in part as follows:

"Q.    In discussing how it would be run or the night schools would be conducted, do you recall any

instructions or discussion between Mr. Woodworth and yourself as to the fees to be paid and how they were to be collected, for attendance, etc.?

A.   There was to be a $1.00 fee - - -."

At this point attorney for the respondent made his objection to the above question, which was allowed over his objection and exception taken. The County Attorney took the position that the question and answer was in reference to any orders or directions that the respondent in his capacity as Superintendent of Schools would give Mr. Kelley, his subordinate, relative to the disposition of night school fees. The answers allowed to be given by the presiding justice show direction as to collection of fees and disposition of same. There appears to be no grounds for exception to the allowance of the questions and answers.

EXCEPTION 2.

Witness Kelley on direct examination was asked:

"Q.   In what capacity did you turn these funds over to Mr. Woodworth?

A.   Simply as agent, as principal of the High School, working for him."

Counsel for respondent objected to any statements made by Mr. Kelley regarding his authority or his being an agent of the respondent or for the reason for his turning money over to the respondent. Mr. Kelley was merely explaining what his part was and under what circumstances he turned money over to the respondent and it makes no difference what Kelley's relationship was in so far as the respondent is concerned. The important point is that he was instrumental in placing monies in the hands of the respondent which later became the subject of embezzlement as contended by the State. Respondent takes nothing by this exception.

## EXCEPTION 3.

Roland Amnott, Chief of Police in the City of Lewiston, was called by the State and testified in part as follows:

"Q. As a result of that did you speak with Mr. Woodworth?

A. Yes, sir.

Q. Was anyone else present when you talked with him?

A. Yes, sir.

Q. Was it Officer Soucy?

A. Yes.

Q. At that time what statement did Mr. Woodworth make to you?

Mr. COFFIN: Your Honor, I object at this point. I suggest possibly it is an appropriate matter to be discussed outside the presence of the jury.

The COURT. We will go in Chambers."

Counsel for respondent objected to any statements made by the respondent to witness Amnott because it is claimed that no *corpus delicti* had been established and, therefore, any admissions made to Officer Amnott would not be admissible.

This brings up the necessity of determining whether up to this point in the case the State had proven to a probability that the crime of embezzlement had been committed. The record discloses that the respondent in 1949 directed the Principal of the High School, Mr. Kelley, to turn in to him, the respondent, all monies collected for high school tuitions and, in pursuance to this direction, a sum of $2083.92 was received by the respondent from 1949 to 1953 inclusive. This money was not the property of the respondent but belonged to the City of Lewiston, which the respondent well knew. The respondent also knew that there

was established at the time he took the money a certain classification by the City of Lewiston under which the money was received for tuition fees. This classification was known as "Departmental Rev. - R-70" because in 1949, on December 12th, the respondent paid into the Treasurer of the City of Lewiston the sum of $240.00 of this amount of $2083.92 and received a receipt upon which appeared the classification to which the payment was credited. The respondent is a man of education, holding a responsible position as Superintendent of Schools and must have known and realized that he was retaining and converting to his own use monies which belonged to the City of Lewiston. By this one payment of $240.00 he recognized his duty to turn over the money to the proper authorities, yet for a period of approximately four years from that original payment he never again made another payment. These recited facts are sufficient to show that in all probability the crime of embezzlement had been committed and, therefore, the testimony of Roland Amnott was properly admitted.

*State* v. *Hoffses,* 147 Me. 221, at page 226:

" 'It has been said that the corroboration of an extra-judicial confession is met if the additional evidence is sufficient to convince the jury that the crime charged is real, and not imaginary; and again, that it is sufficient if the independent evidence establishes the corpus delicti to a probability.' "

*State* v. *Levesque,* 146 Me. 351; *State* v. *Carleton, et al.,* 148 Me. 237; *State* v. *Jones,* 150 Me. 242.

This exception overruled.

The respondent contends that embezzlement does not lie as no demand was ever made of him. Under the circumstances, recited above, a demand becomes unnecessary as Woodworth by his own acts evidenced an intent to convert the money to his own use. 18 Am. Jur., 583, Sec. 23:

"As a general rule, if a criminal intent accompanies a misappropriation of funds or property held by an agent or fiduciary, the crime of embezzlement is complete and the owner of embezzled property need not make a demand for its return, in the absence of a statute to the contrary. It is only when other evidence to prove a fraudulent conversion is not available that the proof of a demand is necessary."

*State* v. *Leonard,* 105 P. 163 (Wash.).

In argument, defense attorney stated that although he did not waive Exception 4, he was not pressing it. Under these circumstances we will not consider Exception 4 which relates to the denial of a motion for a directed verdict.

The respondent contends that the indictment does not allege a crime, although no motion was made to this effect by the respondent at the time of trial.

Objection is made to the indictment on the ground that each of the seven counts in the indictment alleges "certain money to the amount of *\*\*\*\*\**" and that there is lacking in each count a more particular description of the money. A reading of the indictment will reveal the fact that it alleges a criminal offense of the nature of embezzlement. The respondent should have attacked the indictment at the time of trial because, other than the alleged defect complained of, there were sufficient allegations in the indictment alleging in substance a criminal offense. The absence of an allegation in this indictment of a particular description of the money alleged to have been the subject of the embezzlement does not vitiate the indictment as this omission was cured by the verdict.

27 Am. Jur., Sec. 191, page 736:

"It is equally well settled, however, that defects which are merely matters of form and not of substance, ambiguities, etc., in an indictment or in-

formation are cured by verdict; objections to such a defect, if made after verdict, come too late, regardless of the fact that they might have rendered the indictment bad had they been seasonably taken."

*Exceptions overruled.*

*Judgment for the State.*