**STATE of Maine**

v.

**Betty GRANT.**

Supreme Judicial Court of Maine.

Dec. 21, 1971.

---

Peter T. Dawson, Asst. Atty. Gen., Augusta, Edward Gaulin, Asst. County Atty., Alfred, for plaintiff.

Gerald Nason, Biddeford, Roger Flaherty, Basil L. Kellis, Sanford, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

Defendant here appeals from a conviction of the crime of murder. But three issues are presented for review.

### CORPUS DELICTI

A police officer serving as the State's first witness testified that in company with another officer he responded to a call; that in response to a knock on the door of the premises to which the officers had been directed, the door was unlocked and opened by the defendant; and that as she opened

the door the defendant said, "Joey, I killed my aunt." [1]

At this point an objection was offered on the ground that the *corpus delicti* had not as yet been established. The Justice below sustained the objection and instructed the jury to disregard the answer of the witness. He further instructed the witness not to relate any conversation with the defendant. At an ensuing bench conference the State urged that only the order of proof was involved and that the defendant's statement might properly be shown subject to the requirement that the *corpus delicti* be later shown. The Court then ruled that defendant's statements would be excluded until such time as the *corpus delicti* was established. He further suggested that the State's witnesses be cautioned accordingly. Although no issue is presented for our determination as a result of this ruling, we take this occasion to note that the course adopted by the presiding Justice with respect to order of proof accords with what we deem to be the better practice, a practice which was adopted as a rule of evidence in State v. McPhee (1955) 151 Me. 62, 65, 115 A.2d 498, 499. The State is in no way prejudiced by a procedural requirement that it proceed to establish the *corpus delicti* before seeking to offer evidence of inculpatory admissions or confessions of the defendant.

In compliance with this ruling by the Court, the State proceeded with the introduction of voluminous evidence bearing on the existence of the *corpus delicti*, at the close of which the first witness was recalled for the purpose of relating the above quoted statement made by the defendant. The defendant promptly renewed her objection on the same ground. The objection was overruled and the witness was permitted to answer, again quoting the defendant as saying, "Joey, I killed my aunt." The defendant contends that the admission of this damaging statement into evidence for consideration by the jury was prejudicial error. The theory of defendant's counsel apparently is that the State's evidence was still inadequate to establish the *corpus delicti* so as to make the defendant's statement admissible in evidence. We find the argument offered in support of this theory confusing. Defense counsel does not appear to perceive or apply the important distinction between the quantum of proof required to establish the *corpus delicti* and the quantum of proof required to establish guilt upon the whole evidence. The *corpus delicti* rule stems from judicial experience and a resulting unwillingness to rest proof of guilt exclusively upon uncorroborated confessions and admissions. The role of *corpus delicti* evidence is to corroborate and support the confession or admission and thus avoid the possibility of conviction of a crime not committed by anybody. To this end the requisite quantum of proof with respect to the *corpus delicti* has been clearly defined. In State v. Wardwell (1962) 158 Me. 307, 320, 183 A. 2d 896, 904 we carefully reviewed our case law and concluded:

> "It appears from these decisions that it is not necessary to prove the corpus delicti beyond a reasonable doubt before extra-judicial confessions are admissible. Although the opinions [2] use different language, we do not consider that there is any essential difference in the term 'in all probability' as used in the Hoffses and the Woodworth cases and in the words 'substantial belief' as used in the McPhee and Jones cases. However, in order to prevent any confusion we rule that it is a sufficient foundation for the admission of a confession or statement

---

1. The officer accompanying the witness was Joseph Beal, a cousin of the defendant; and presumably it was to him the spontaneous remark was directed.

2. The "opinions" referred to and analyzed in *Wardwell* are State v. Hoffses (1952) 147 Me. 221, 85 A.2d 919; State v. Carleton (1952) 148 Me. 237, 92 A.2d 327; State v. Jones (1954) 150 Me. 242, 108 A.2d 261; State v. McPhee (1955) 151 Me. 62, 115 A.2d 498; and State v. Woodworth (1955) 151 Me. 229, 116 A.2d 778.

by the accused if the State at that time has presented such credible evidence *as will create a really substantial belief* that the crime charged has actually been committed by someone." (Emphasis supplied.)

 This is essentially a procedural determination to be made by the trial court. If there is then in the case credible evidence which, if believed, would create in the mind of a reasonable man, not a mere surmise or suspicion, but rather a really substantial belief that a crime had been committed by somebody, a ruling of the trial court admitting a voluntary confession or admission will not be reversed. So here there was adequate credible evidence to create a substantial belief that the victim of this homicide had died as the result of manual strangulation, not self-inflicted, and there was therefore no error in admitting defendant's statement at the time it was admitted.

Later in the course of the State's presentation of evidence, another witness, also a police officer, was permitted over similarly grounded objection to relate other statements made at the police station by the defendant. This witness stated:

"To the effect, the words were to the effect that the people that arrested her, the Biddeford Police Department had made a mistake, that no one understood what this was about and what they were saying couldn't be. She used the words, 'My aunt can't be dead, there's a mistake here.'

\* \* \* \* \* \*

'It was all a joke, we had an argument over her male friend and I pushed her onto the floor and I choked her while she was on the floor.' "

For the same reasons this evidence was properly received at the time it was offered.

## VOLUNTARINESS OF ADMISSIONS

 Defendant also asserts that her several statements were involuntary and obtained in violation of her constitutional rights. This matter was thoroughly explored in a hearing in advance of trial on a motion to suppress. At the conclusion of that hearing the Court gave his ruling in these terms:

"For the record the Court will indicate that the testimony presented to the Court satisfies the Court beyond any reasonable doubt that the statements described in the testimony at the hearing this morning were voluntary and in fact in most instances spontaneous, that as to any statements which were elicited as a result of interrogation in a custodial situation the Court is satisfied that the defendant was advised of her rights, and that she specifically waived them."

It suffices to say that the evidence adduced at the preliminary hearing and again at the trial fully supports the ruling of the Justice below.

## MOTION FOR JUDGMENT OF ACQUITTAL

 At the close of all of the evidence the defendant moved for judgment of acquittal based in effect upon the contention that the State's evidence was inadequate to support a finding of guilt beyond a reasonable doubt. Pursuant to M.R. Crim.P., Rule 29(a) decision on the motion was reserved until after jury verdict at which time the motion was denied. Defendant's counsel contend that because of alleged inconsistencies and uncertainties in his testimony, the State's pathologist is not entitled to belief with respect to his opinion as to the cause of death. They further stress the alleged conflict in opinion as between this witness and a pathologist presented by defendant. We think the issue was so postured as to be one most appropriately for the jury. The State's pathologist performed the autopsy upon the body of the victim. On the basis of his findings and observations he twice gave his "opinion to a reasonable medical certainty" that the cause of death was "asphyxiation due to

manual strangulation." His opinion also ruled out the possibility that the fatal injuries were self-inflicted. The witness was a qualified expert in his field. His opinion testimony was in no sense improbable or unworthy of belief. The defendant's pathologist had no opportunity to observe the autopsy and was therefore compelled to base his contrary opinion on his examination of medical records, exhibits and the testimony of other witnesses. It was for the jury and not for the presiding Justice to determine what weight should be assigned to each of these conflicting medical opinions. We conclude that the evidence adduced, viewed as it must be in the light most favorable to the State, was such as to justify and permit the verdict which the jury returned. The motion was properly denied.

Other contentions made on behalf of the defendant have either been abandoned or are without merit and require no further discussion here.

Appeal denied.