**STATE of Maine**

v.

**Paul E. ATKINSON.**

Supreme Judicial Court of Maine.

Sept. 11, 1974.

judicial admissions of the defendant; (2) whether the presiding Justice committed reversible error in denying to defense counsel the right to ask a prosecution witness who had testified as to admissions made by defendant at a party whether the witness was smoking marijuana at the time; and (3) whether defendant was entitled to a judgment of acquittal on the ground that the evidence in its entirety failed to justify a jury conclusion beyond a reasonable doubt that defendant had committed a "breaking" (as one essential element of the crime charged).

We deny the appeal.

Michael N. Westcott, County Atty., Wiscasset, for plaintiff.

Fitzgerald, Donovan & Conley, P. A., by J. Michael Conley, III, Bath, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

Indicted on November 1, 1972 for having committed the crime of breaking, entering and larceny in violation of 17 M.R.S.A. § 2103, defendant, Paul E. Atkinson, after a trial by jury in the Superior Court (Lincoln County) was, on November 28, 1972, found guilty as charged.

Defendant's appeal from the judgment of conviction raises three issues for decision: (1) whether the presiding Justice erred in ruling that the "corpus delicti" had been sufficiently established to authorize the evidentiary admissibility of extra-

## I.

We find no merit in defendant's claim as to inadequate proof of the "corpus delicti."

■ Within the criterion most recently considered in State v. Wardwell, 158 Me. 307, 183 A.2d 896 (1962); State v. Grant, Me., 284 A.2d 674 (1971); State v. Kelley, Me., 308 A.2d 877 (1973) there was here adduced sufficient

> "credible evidence which, if believed, would create in the mind of a reasonable man, not a mere surmise or suspicion, but . . . a really substantial belief . . . ." (284 A.2d p. 676)

that someone had committed a "breaking" of the premises identified in the indictment.[1]

Independently of the admissions of the defendant, credible evidence had been introduced that for a substantial period before June 1, 1972 (the alleged date of the commission of the crime charged) the "Pine Crest Motor Court", a motel situated in the

---

1. In the instant case counsel for the defendant asserts that the *Wardwell-Grant-Kelley* criterion establishes that the "corpus delicti" must be proved by *a fair preponderance of the evidence* before extra-judicial admissions of defendant may be received into evidence. This is a misconception. By differentiating evidence which will " . . . create in the mind of a reasonable man, . . . a really substantial belief . . . ." from " . . . mere surmise or suspicion . . . ." this Court was not intending to suggest the necessity of a quantum of proof of the level of "fair preponderance of the evidence." The standard contemplated is more akin to the substantive content connoted by "probable cause" to believe that the crime charged in the indictment has been committed by some person.

Town of Edgecomb, had been for sale and for this reason no part of the motel was being used or occupied by anyone. Approximately two weeks prior to June 1, 1972, the owner of the motel, while showing it to a prospective purchaser, had taken the prospect through the office building of the motel. At the time, as the owner left the office building, he checked its security and satisfied himself that two exterior doors and two windows which provided the only access into the office building were "all closed and locked."

At approximately 10:00 p. m. on June 1, 1972, having received a telephone call from the Wiscasset Police, the owner went to the office building of the motel. He used his own key to unlock one of the doors and, upon entering, noticed at once that most of the keys for the various units of the motel and a four-slice toaster were missing. A quick inspection revealed that all the doors and windows of the office building were still closed and locked.

Subsequently examining more carefully, the owner discovered that on one of the doors of the office building there were "scratches all around . . . " the area of "the striker pad and the latch where the door closes." The door was constructed with an "exceptionally wide crack where the door struck on the striker." By insert-

ing a knife blade in this wide crack, the owner was able to cause the striking "pendulum" to glide and thus have the door come open while it remained in a "locked" condition.

■ This evidence goes beyond "mere surmise and conjecture" and is sufficient to warrant

"in the mind of a reasonable man, . . . a really sustantial belief . ."

that someone had committed a "breaking" of the "close" of the office building by tampering with the latch of one of its doors, using a knife, or similar instrument, to cause the door to open although it remained "locked."

■ The presiding Justice correctly allowed into evidence the extra-judicial admissions of defendant which, apart from the "corpus delicti" question raised by defendant, were otherwise competent and admissible.[2]

II.

■ A seventeen year old girl was at a party held after supper on June 1, 1972 at a place "just down the road from the Pine Crest Motor Court." She was presented as a witness for the State and gave crucial

---

2. In a collateral argument defendant has suggested that the presiding Justice, in stating his reasons for concluding that the "corpus delicti" had been sufficiently proved, made frequent references to the commission of *a crime* rather than *the crime charged by the indictment*. Defendant maintains that these references reveal that the presiding Justice had misconceived the meaning of "corpus delicti" and as a result of his misconception slipped into the error of allowing defendant's out-of-court admissions into evidence without a sufficient showing of a "break."

The contention is unacceptable on two grounds.

First, the premise of the argument is erroneous. The record shows that if the presiding Justice at times referred to "a crime", at other times, while addressing the arguments of both the prosecutor and defense counsel that proof of the "corpus delicti"

is evaluated in terms of the proof of the crime charged by the indictment, he referred explicitly to "the crime." Reference to *"the* crime" (emphasis supplied) in such context sufficiently shows that the presiding Justice had in mind *not any* crime but the crime charged in the indictment.

Second, defendant's contention is without merit on its own terms since, as the discussion ante shows, there was sufficient proof of the "breaking" element (as the only element which defendant brings into question) to establish that the "corpus delicti" of the crime charged in the indictment had been sufficiently shown to support receiving in evidence the out-of-court admissions of the defendant. Thus, even had the presiding Justice misconceived the "corpus delicti", the record is clear that, notwithstanding deficiencies in his reasoning, his ruling was correct.

testimony as follows: (1) the defendant arrived at the party approximately a half hour after the witness; (2) he brought with him, and exhibited at the party, some keys and a toaster (among other items); (3) he tossed one of the keys to the witness and while she had it in her possession she saw that the key was attached to a black tag reading: "Pine Crest Motor Court" and designating the number "9"[3]; (4) in the hearing of the witness at the party defendant stated that: "When he went in, . . . there wasn't much worth taking . . . of any value"; (5) and as to the place where he "went in", defendant "never mentioned the exact name . . . [h]e just said up the road a piece."

On cross-examination defense counsel asked the witness: "On that particular evening were you smoking marijuana?" The prosecutor objected to the question and the presiding Justice excluded it. Defense counsel made clear on the record that his reason for asking the question was: "If this witness was smoking marijuana that night . . . [her] memory of the night would be somewhat unclear."

By this explanation defense counsel revealed that the materiality of his question depended upon the premise that judicial notice may be taken that marijuana smoking adversely affects human faculties critical to testimonial accuracy. The validity of this premise is doubtful, cf. State v. Cedre, Me., 314 A.2d 790 (1974). We find, however, that we need not here reach the issue since we sustain the ruling of the presiding Justice on another ground.

At the time defense counsel put his question to the witness nothing was yet in evidence, or called to the attention of the presiding Justice, to indicate behavior of the witness at the party reasonably suggesting that her perceptual, or memory, faculties were then impaired. The question posed to the witness (1) could require her either to admit to a criminal act or, alternatively, to claim privilege against self-incrimination, and (2) might well engender reactions of strong hostility against the witness in light of attitudes toward marijuana smoking currently prevalent in our society. The question thus had high potential to create undue prejudice against the witness which could induce unjustifiable discrediting of her testimony by the jury. For this reason, in the absence of at least some preliminary foundational showing that on the night in question the witness had been behaving in a manner indicating that her perceptual, or memory, faculties, as they then were operating, were fairly open to attack, the presiding Justice's exclusion of the question was within the limits of the broad judicial discretion reposed in the presiding Justice to regulate the scope and extent of counsel's efforts, on cross-examination, to elicit impeachment evidence. See: State v. Cedre, supra; State v. Warren and Phinney, Me., 312 A.2d 535, 544 (1973); State v. Lizotte, Me., 249 A.2d 874, 880 (1969).

### III.

■ Our conclusion that defendant's extra-judicial admissions had been properly received into evidence (ante, at p. 46) precludes merit in defendant's last point on appeal—his claim that he was entitled to a judgment of acquittal because of inadequacy of the evidence to authorize a jury conclusion beyond a reasonable doubt that he had committed a "breaking."

Defendant had admitted that "when he went in" to a place "up the road a piece", he had found that "there wasn't much worth taking . . . of any value." This admission, taken in combination with the evidence of "corpus delicti" already held by us minimally adequate to render such statement of defendant admissible as evidence, suffices, in legal contemplation,

"  . . . to yield, by mutual corroboration, an intensified evidentiary cogency

---

3. The witness identified this key in the courtroom and it was introduced into evidence as Exhibit No. 1.

constituting the proof beyond a reasonable doubt necessary for conviction." State v. Kelley, Me., 308 A.2d 877, 886 (1973)

The entry is:

Appeal denied.

Four Justices concurring with WERNICK, J.

WEATHERBEE, J., dissents.

WEATHERBEE, Justice (dissenting)

In my opinion the Defendant's counsel was entitled on cross-examination to explore any reasonable possibilities of impairment of the witness' capacity for clear observation and accurate recollection of the crucial events of the evening. Although we cannot take judicial notice that the use of *any* quantity of marijuana—or alcohol—adversely affects observation or recollection in *every* individual, the hallucinogenic qualities of the drug are very well known.

We recognized these qualities in State v. Cedre, Me., 314 A.2d 790 (1974) where we held that evidence of addiction was not admissible to prove inherent unreliability, but agreed with the statement of the Supreme Court of Alaska that

> "Where evidence of addiction tends to show that the witness was under the influence of narcotics either at the time of trial or at the time of the occurrence to which he testifies, where the evidence proves that ·his ability to perceive, remember, and testify are substantially affected by his habit, or where such evidence would be independently admissible under some other theory, it should not be excluded." Fields v. State, Alas., 487 P. 2d 831 (1971).

If another person's testimony that a witness' awareness or perception appeared to be affected by the use of drugs would be admissible as bearing on the witness' credibility, I can see no reason why counsel should not be permitted to make similar inquiry of the witness herself in cross-examination. Pease v. Burrowes, 86 Me. 153, 29 A. 1053 (1893).

I feel certain that if the witness had answered the question and admitted the use of marijuana on that occasion, no one would argue that another question as to whether her ability to observe the events and recall them from her memory were affected by its use would be improper.

If the inquiry is made in good faith, respectfully and reasonably, I do not believe the fact that the witness could possibly be offended by the question or even incriminated by her answer (if she chose to waive her Fifth Amendment rights) should affect its admissibility.

When he excluded the question in issue, the Justice had been made aware that marijuana was being smoked by some one or more of the young people at this evening camp party and that the witness' own testimony was revealing some uncertainty of memory of the events which was of arguable significance. The witness herself had just acknowledged that she had been "drinking" at the party and that "there was marijuana being smoked at the party". She had answered three of the five last previous questions by saying (twice) "I don't remember that clearly" and (once) "I don't remember that exactly."· I think the *possibility* that the witness herself was one of those smoking marijuana and that her ability to observe and recall *may* have been adversely affected was not at that point in the trial so remote and unreasonable as to justify barring the inquiry.

I think that the exclusion of the question was legal error, cannot be found to be harmless, and should require a new trial.