Willie Lee BURNETT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

April 25, 1975.

Rehearing Denied June 20, 1975.

C. Michael Hatzell, Louisville, for appellant.

Ed W. Hancock, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

The appellant was found guilty of rape (KRS 435.090) and of indecent and immoral practices (KRS 435.105) and sentenced to life imprisonment on the first count and five years' imprisonment on the second.

There is no question that a heinous offense or offenses were committed upon the prosecuting witness, but there was a real question as to the identity of the offender,[1] and we cannot say that the proof against the appellant in that respect was so clear that the error in admitting evidence of his prior conviction of a felony was not prejudicial. According to the transcript, this is what took place:

Q– "While we're on the issue of truth, do you know what a felony is?"

A– "Yes, I do."

Q– "Have you ever been previously convicted of a felony?"

A– "Yes, I have."

"MR. HATZELL: Object to that, Your Honor. May we approach the Bench?"

"(Whereupon, the following proceedings were had at the Bench, out of hearing of the jury.)"

"MR. HATZELL: I think he can't ask about a felony, without going by the Cotton case and having an in chambers hearing to determine which of these questions you may ask and which you may not."

"THE COURT: You can't go into it. All you can ask him is yes, or no. That's what the Cotton case says."

"MR. HATZELL: He can't even ask him yes, or no, until we go into chambers."

1. For example, before identifying the appellant from photographs and in a police lineup the prosecuting witness had described her assailant as being some four inches shorter in height than her husband. Actually her husband and the appellant were about the

"THE COURT: No, that's not what the law says. That's the way a lot of lawyers read it, but that's not what it says."

"MR. HATZELL: All right."

"(End of proceedings at Bench.)"

"THE COURT: Ladies and gentlemen of the jury—"

"MR. ROSENBAUM: (Interrupting) Can we read back the question and answer, Judge? I apologize."

"(Whereupon, question No. 90, together with the answer thereto, were read by the reporter.)"

"THE COURT: Ladies and gentlemen of the jury, you may consider that testimony, the statement by the witness that he has been convicted of a felony, only for the purpose of whether or not it would affect his credibility as a witness, if you wish to consider it at all, and for no other purpose."

In his closing address to the jury the prosecuting attorney made use of this evidence as follows:

"Now, I asked him on direct examination if he had ever been convicted of a felony, and he answered yes, that he had, and the Judge properly instructed you that you may consider that, in weighing his testimony. The law of this State, and of every state is that when a man has previously been convicted of a felony, that he is not necessarily as credible and worthy of belief—"

"MR. HATZELL: (Interrupting) Objection, Judge."

"THE COURT: Sustain the objection. It's up to the jury."

"MR. ROSENBAUM: I said not necessarily. You may consider this felony con-

same height. A mail carrier who saw the assailant departing from the public washroom in which the offense had just taken place also testified that the man he saw was shorter than the appellant.

viction in weighing whether or not he's telling the truth."

The case was tried in June of 1974. Four years before that time it had been announced in Cotton v. Commonwealth, Ky., 454 S.W.2d 698, 702 (1970), that evidence of a previous conviction for impeachment purposes would thereafter be limited to felony convictions evincing dishonesty, stealing, or false swearing and that the nature of the conviction should first be ascertained in a hearing or conference held outside the presence of the jury.[2] There was absolutely no excuse for either the trial court or the prosecuting attorney to be oblivious to such an important and frequently-occurring point of evidentiary law. Reversal in such a case does not reflect a soft attitude on the part of appellate judges toward crime and criminals. It is a direct result of the trial court's failure to recognize and comply with the law.

The judgment is reversed with directions for a new trial. Clayton and Stephenson, JJ., dissent because it is their opinion that in view of the strength of the evidence for the Commonwealth the error was not prejudicial.

2. The motion for a new trial in the instant proceeding stated that the appellant's prior conviction was on a narcotics charge. Under the *Cotton* rule, of course, it would not serve as a basis for impeachment.