**Robert D. SYKES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

June 10, 1977.

Jack Emory Farley, Public Defender, Larry H. Marshall, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Carl T. Miller, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

The litigation that prompts this appeal arises from a sordid drama of events that led to the brutal murder of Gladys Deskins at her home on Johns Creek in Pike County, Kentucky, on the night of July 11, 1971.

Robert Sykes appeals from a judgment sentencing him to life imprisonment pursuant to a jury verdict finding him guilty of conspiring with Boone Deskins, Willard Christian and William Eugene Thompson to murder Gladys Deskins.

In support of a plea for reversal of the judgment, Sykes asserts eleven assignments of error. A number of his points of error either merge into or overlap others. Sykes presents his contentions in an 81-page brief and a 17-page reply brief. This court will address only those issues which the court regards as warranting discussion. To do more would equate the length of this opinion with that of Sykes' brief and reply brief.

In order to properly dispose of the questions presented, the court deems it appropriate to detail pertinent facts and some of

the procedural background prior to the commencement of Sykes' trial.

Boone Deskins hired "Woody" Christian to kill his estranged wife Gladys. Deskins promised Christian $7,000.00 to kill her. Christian was squeamish, and expressed reluctance to commit the murder. He didn't mind to burn buildings for Deskins, but the commission of murder was a "horse of another color." However, Christian engaged the services of Sykes and Thompson to aid him in murder for hire. He promised to divide the $7,000.00 with Sykes and Thompson. Less than a year after Gladys' murder, Christian, while a federal prisoner in Terre Haute, Indiana, had a troubled conscience. He confessed his part in the crime. He also told the authorities in minute detail the events prior to and leading up to the murder. Christian informed the authorities the part that each of his coconspirators played in the drama.

As a result of his confession, Christian, Deskins, Thompson and Sykes were jointly indicted for the offense of willful murder. KRS 435.010. (Now KRS 507.020). The indictment alleged that Sykes aided, abetted and conspired with his coindictees in murdering Gladys Deskins by stabbing her with a knife and shooting her with a shotgun.

Boone Deskins was tried first and convicted. Next, Thompson was tried and convicted. Each was sentenced to life imprisonment in conformity with separate jury verdicts. The principal witness in each of the cases was Christian. His testimony was sufficiently corroborated in the trial which resulted in the conviction of Boone Deskins which conviction was affirmed by this court. See *Deskins v. Commonwealth*, Ky., 512 S.W.2d 520 (1974).

On November 11, 1974, Thompson filed in this court a notice and motion for a belated appeal. The court denied that motion.

On July 17, 1972, Sykes waived formal arraignment and entered a plea of not guilty. His trial was continued to the following October term. After the Commonwealth elected to try Deskins first, the trial court on January 26, 1973, reassigned Sykes' trial to March 5, 1973. Sykes' trial was continued again after the Commonwealth elected to try Thompson.

On October 12, 1973, Sykes moved the trial court to permit his attorney, Fred B. Redwine, to withdraw from the case. The trial court sustained that motion and appointed Gary Johnson as attorney for Sykes. Then Sykes moved to dismiss Johnson. On February 27, 1974, the trial court overruled that motion. He then appointed Lee Ledford as co-counsel.

On March 14, 1974, Sykes moved for a change of venue "from Pike County to another suitable neighboring county."

On March 25, 1974, the trial court overruled Sykes' motion to dismiss the indictment because he had been denied a speedy trial. Sykes renewed his motion for change of venue on May 28, 1974. He supported that motion with affidavits of 54 persons. The Pike Circuit Court granted the motion and transferred Sykes' case to the Floyd Circuit Court.

Sykes moved for a continuance on September 10, 1974, to enable him sufficient time to arrange for the attendance of witnesses located in various federal prisons. At this point the trial court appointed Dan Rowland to assist in Sykes' defense. In a rather unique proceeding the trial court conducted a closed hearing on the relevance and materiality of the evidence of Sykes' proposed witnesses. Representatives of the Commonwealth were excluded and the record of the hearing "sealed." The trial court directed the Commonwealth to produce all but four of the federal prisoners named by Sykes as witnesses.

Late in December 1974, the trial court on motion of the Commonwealth's Attorney, amended the order directing the Commonwealth to produce Sykes' witnesses. He did however, order the testimony of the federal prisoners be taken by depositions.

Prior to commencement of Sykes' trial, a hearing was held in chambers. Sykes moved that Johnson and Rowland be discharged as counsel. He contended that Johnson and Rowland were inexperienced

in criminal trials. His attitude can best be reflected when he told the trial judge:

"I am ready to let the court, your honor, proceed without them and without me. I will be no party to this trial."

The Court—"Oh, yes, you will too!"

Sykes—"Yes, your honor, I will be here, but I will be moot and I will let you try the case and will have no part in it, because my witnesses are not here, the Commonwealth has not got my witnesses here at this time."

The trial court told Sykes he would permit him to question the witnesses but Johnson and Rowland would be present to assist him.

■ Sykes contends that he was denied compulsory process for obtaining material witnesses. He asserts also that the trial court erred in ordering the testimony of his witnesses be taken by depositions. For reasons never disclosed, Sykes wanted "flesh and blood" witnesses brought from federal prisons located in Atlanta, Georgia; El Reno, Oklahoma; Oxford, Wisconsin and Terre Haute, Indiana. The Commonwealth is under no duty to produce witnesses for a defendant in a criminal case. The cases cited by Sykes on the right of an accused to present witnesses in his defense say nothing about the responsibility of the prosecution to secure such witnesses or to pay the expense involved. The rules of criminal procedure fail to support Sykes' contention. RCr 7.02 provides:

"Upon the request of the attorney for the Commonwealth or the defendant or his attorney, the clerk of the court shall issue subpoenas."

RCr 7.04 provides that the rules of civil procedure shall apply to and govern the coercing of the attendance of witnesses.

■ The trial court ordered the Commonwealth to secure at its expense the testimony of the witnesses in federal prisons by deposition. CR 32.01(3). He "ordered that the expense of one attorney for Sykes be paid by the Commonwealth." Thereafter, an attorney for Sykes and an attorney for the Commonwealth went to Atlanta for the purpose of taking depositions of three witnesses. At the time, Sykes was an inmate of the same federal prison as were the witnesses. Sykes refused to allow the depositions to be taken. The witnesses refused to give depositions. With Sykes' attitude in this respect, this court is of the opinion that the claim he was denied any constitutional right has no merit.

■ The next assignment of error is that the trial court's failure to appoint other counsel constitutes a denial of Sykes' right to counsel. This claim is refuted by the record. Johnson and Rowland were capable attorneys. They worked diligently in Sykes' behalf. They did so without his cooperation. If Sykes had desired to forego the benefit of counsel he would have been entitled to do so. See *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Sykes, however wanted counsel. This court has held that it was not an abuse of discretion for a trial court to order a trial to proceed although the defendant and his attorney were unhappy with each other. *House v. Commonwealth*, Ky., 487 S.W.2d 917 (1972). The record of the trial demonstrates that the trial judge did not abuse his discretion in requiring the trial to proceed with Rowland and Johnson as attorneys for Sykes.

■ Sykes argues that the testimony of Christian, an accomplice, was not sufficiently corroborated by other evidence. Christian testified that he, Sykes and Thompson left for Gladys Deskins' house around 10:00 p. m., July 11, 1971. Sykes drove the car. He let Christian and Thompson out near Johns Creek High School. After Gladys' murder, Sykes came back and picked up Christian and Thompson. Christian testified that Sykes drove to Pikeville to the Pizza Inn to establish an alibi. Thereafter, Christian divided the money with Sykes and Thompson.

On the night of the murder Sykes was seen in the company of Christian and Thompson. Assistant Chief of Police, Robert Burgess, saw the three together between 10 and 11 o'clock on the night of the

murder. Patrolman Cal Runyan also saw the three together. Reepers Branham testified that he saw Sykes driving with Thompson and Christian in the car between 10:30 and 11:30 the night of the murder, July 11, 1971.

Detective C. D. Potter testified that when Christin confessed his part in the murder, he told Potter where to find the .410 gauge shotgun used in the murder. This court has compared the testimony of Christian with that given by him in *Deskins, supra.* His testimony has not varied. It is as constant as the polestar. It has the ring of truth. His testimony that Sykes drove the automobile to and from the crime and transported him and Thompson to the Johns Creek School never varied. Sykes also received ⅓ of the amount paid Christian for the murder.

Another more direct corroboration is found in the testimony of Walter Hammershoy. He testified that on an auto trip to Virginia, "Sykes said he'd done it, and said something about a certain amount of money he had received and I told him to shut up that I didn't want to hear it." In response to a question, Hammershoy testified as follows:

"Q. 6. Walter, have you had in the past occasion to travel around with or run around with Robert Sykes?

A. Yes, I had quite often.

Q. 7. Are you acquainted with the circumstances—the general circumstances and the time surrounding the death of Gladys Deskins?

A. I wasn't in Pike County at that time.

Q. 8. Have you heard about it?

A. I have heard about it.

Q. 9. And heard it discussed since then?

A. Yes.

Q. 10. At any time, any place, have you heard Robert Sykes make any statement about his involvement in that crime?

A. I did—in Virginia.

Q. 11. Where abouts, I just want you to explain where you were and who was with you and what was said.

A. Enroute from Grundy, Virginia to Haysi, I guess, and we were drinking a little bit and Robert had earlier convinced me he had nothing to do with it and then Sykes said he had done it and said something about a certain amount of money he had received and I told him to shut up, that I didn't want to hear it."

The corroborative evidence is more than ample for the case to have been submitted to the jury. The evidence was sufficient to sustain the conviction.

Sykes complains that the photographs filed by the Commonwealth as exhibits were inflammatory. He contends that the court erred in admitting the photographs. There is simply no merit to this contention. All of the photographs but two complained of as being inflammatory have already been ruled upon by this court in *Deskins v. Commonwealth, supra.* The court said in that case:

"All the photographs were taken at the scene of the crime and revealed the nature of the wounds and the position of the decedent at the time she was found by the officers. In this advanced technological age of television, movies and news media those persons selected as jurors are able to view a picture of a victim of crime without prejudice to the defendant." *Napier v. Commonwealth*, Ky., 426 S.W.2d 121 (1968).

"We hold that the photographs were competent evidence of the fact that murder had been committed and that Gladys Deskins had died as a result of the gunshot wound."

■ The two photographs taken at the funeral home are not gruesome. One of them is a picture of Gladys' hand showing a knife wound. The other is a picture of Gladys' back showing multiple stab wounds.

These pictures, along with pictures taken at the scene, constituted visual evidence on material issues and were properly admitted.

This court has reviewed all of the other assignments of error. None of them have merit. Some of them are not preserved for appellate review. This court is of the opinion that Sykes had more than a "tolerably fair trial." The appointed attorneys gave an outstanding performance in representing Sykes. The trial court is to be commended for his patience. There were many in-chambers hearings. In each instance Sykes took over his own defense, was rude to the trial court, and insolent toward his attorneys. The record is replete with instances of Sykes' contempt for the court and for counsel who ably assisted him.

This court is of the opinion that the judgment should be and it is affirmed.

All concur.