Bobby R. ROSS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Shelby SPENCER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Sept. 2, 1977.

As Modified On Denial of Rehearing
Jan. 13, 1978.

Robert F. Stephens, Atty. Gen., James S. Goldberg, Asst. Atty. Gen., Frankfort, for appellee.

Jack E. Farley, Public Defender, Thomas R. Lewis, Asst. Public Defender, Frankfort, for appellants.

Before HAYES, PARK and WINTER-SHEIMER, JJ.

PARK, Judge.

Bobby L. Ross and Shelby Spencer were indicted by the Grand Jury of Lee County for armed assault of Charles L. Shuler with intent to rob. KRS 433.150. On joint motion of the defendants and the Commonwealth, the trial court granted a change of venue and transferred the case to the Estill Circuit Court for trial. Following a joint trial, a jury found both defendants guilty. Ross and Spencer both prosecute appeals from judgments entered by the trial court upon the jury verdict sentencing each to a maximum term of imprisonment of ten years.

Three basic issues are raised by these consolidated appeals. (1) Did the trial court err in trying Spencer in the absence of the witness Evan Reeves? (2) Was prejudicial error committed by the procedures followed in impeaching the testimony of Ross, Spencer and a witness for Spencer by evidence of prior felony convictions? (3) Should the judgments be reversed because of improper conduct on the part of the Commonwealth's Attorney during the trial and in closing argument?

## TRIAL IN ABSENCE OF ALIBI WITNESS

Spencer sought to secure the attendance of Evan Reeves as a witness in order to establish an alibi for the time when the assault was made on Shuler. At the time of trial, Reeves was an inmate at the Eddyville Penitentiary, where Spencer was also incarcerated. Spencer's trial counsel filed a motion for an order requiring the personal appearance of Reeves at the trial. This motion was supported by the affidavit of Reeves that his testimony would establish an alibi for Spencer. The trial court overruled the motion. In this appeal, Spencer claims that he was denied compulsory process for witnesses in his favor in violation of Sec. 11 of the Kentucky Constitution and the sixth amendment to the United States Constitution as made applicable to the states by the fourteenth amendment. See *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

Sec. 11 of the Kentucky Constitution and the sixth amendment to the United States Constitution contain substantially identical language. In all criminal prosecutions, an accused has the right "to have compulsory process for obtaining witnesses in his favor." This court can see no basis for any difference in the construction of the two constitutional provisions. Spencer's right to compulsory process for witnesses in his favor should be measured by the same standard under our Kentucky Constitution and the United States Constitution.

Spencer's motion for an order to secure the personal appearance of Reeves at trial was, in effect, a motion for the issuance of a writ of *habeas corpus ad testificandum*. This common law writ was used to secure the production of witnesses who were beyond the reach of an ordinary subpoena because they were confined in jail. *Neufield v. United States,* 73 App.D.C. 174, 118 F.2d 375, 385 (1941), *cert. denied,* 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1942). The power of trial courts to issue such orders or writs has long been recognized in Kentucky. In *Hancock v. Parker,* 100 Ky. 143, 18 Ky.L.Rep. 622, 37 S.W. 594 (1896), this state's highest court held that a circuit judge could require the warden of the penitentiary to produce a prisoner to testify on behalf of a defendant, Warfield, charged with the crime of rape. The court stated:

> Under section 11 of the Bill of Rights Warfield, who is the subject of a criminal prosecution, has the right not only "to meet the witnesses face to face," but also "to have *compulsory process for obtaining* witnesses in his favor." This right, guaranteed to him by the Bill of Rights, can not be denied to him. Chief Justice Marshall in 1 Burr, Trial 158–9; *Commonwealth v. Jones,* 10 Bush. 746.

> He is entitled to have his own witnesses in court, if they can be reached by the compulsory process of the law, and to coerce their attendance whenever they may reside in the State; and, in order to do this, it is not required that he shall tender to his witnesses any compensation for expenses before resorting to process to compel them to attend. 100 Ky. at 146–47.

As the Commonwealth had the custody and control of the witness, the defendant was entitled to an order requiring the warden to produce the prisoner to testify as a witness in the trial of the case. In *Wedding v. Commonwealth,* 212 Ky. 571, 279 S.W. 981

(1926), the court held that an accused was entitled to an order directing a jailer having custody of a federal prisoner to produce the prisoner to testify as a witness at the trial. Court further held that it was prejudicial error for the trial court to refuse to issue the process and to try the defendant in the absence of the witness.

The Commonwealth takes the position that the issuance of an order for the compulsory production of a prisoner to testify in a criminal trial is not mandatory. In support of this argument, the Commonwealth relies on certain provisions of the Rules of Civil Procedure. Under CR 32.-01(3), the deposition of a prisoner may be used at the trial of a case. Because a prisoner's deposition can ordinarily be used at trial, prisoners are not subject to subpoena under CR 45.05(2). Under CR 45.05(3), a trial court may, in its discretion, order the personal attendance of a witness otherwise exempt from subpoena. The Commonwealth then argues that these provisions are incorporated into the Rules of Criminal Procedure by RCr 7.04. Under RCr 7.04, the provisions of the rules of civil procedure apply to the compulsory attendance of witnesses in criminal proceedings with the exception that the attendance of witnesses residing in "any part" of the Commonwealth "may" be coerced. Relying on the use of the word "may" in RCr 7.04, the Commonwealth asserts that the trial court did not abuse its discretion in holding that Spencer should have taken the deposition of the witness Reeves. Not only is this contention a strained construction of RCr 7.04, but it flies directly in the face of the provisions of section 11 of the Kentucky Constitution. In *Hancock v. Parker, supra,* the court specifically held that a criminal defendant was not bound to waive his right to the compulsory attendance of witnesses by taking the deposition of a witness who was a prisoner in a Kentucky penitentiary.[1]

---

1. We are not presented with a situation in which the prisoner-witness is confined beyond the boundaries of Kentucky. As the prisoner-witness is not "residing in any part" of the Commonwealth, he is not subject to process under RCr 7.04. In such case, the trial court

could, in its discretion, order the testimony taken by deposition under CR 32.01(3), *Sykes v. Commonwealth,* Ky., 553 S.W.2d 44 (1977) (24 K.L.S. 8, pg. 1), even though the presence of a state prisoner might be compelled under the Uniform Act to Secure the Attendance of

Consequently, there is no merit to the argument that Spencer could be compelled to take the deposition of a witness who was incarcerated in the penitentiary.

In denying Spencer's motion for an order to secure the attendance of Reeves at the trial, the trial court made a finding that Spencer's motion had not been "timely filed." The indictment was originally returned on February 7, 1974. When the case was set for trial on February 1976, it was necessary for the trial court to enter an order directing the warden of the Eddyville State Penitentiary to produce Spencer and Ross for the trial, both of them being inmates. The trial was originally scheduled for February 23, 1976. However, Spencer's mother died the night before trial. On February 23, 1976, the trial court entered an order continuing the trial of the case until May 19, 1976, and transferring the trial to the Estill Circuit Court. On May 3, 1976, the trial court on its own motion reassigned the case from May 19, to May 18, 1976. The trial court also ordered that Spencer and Ross be brought from Eddyville to the Estill County Jail on or before May 15, 1976.

Spencer's motion for an order requiring the personal appearance of Reeves was served upon the Commonwealth's Attorney on May 13, 1976. As required by CR 6.04 the motion was accompanied by a notice of the time for the hearing of the motion. The notice provided that the motion would be brought on for hearing before the trial court on May 17, 1976. Thus no request was made to the trial court to secure the personal attendance of Reeves as a witness until the day before trial. This court takes judicial notice of the fact that it is approximately 270 miles from the county seat of Estill County to the penitentiary at Eddyville. As a practical matter, it was virtually impossible for the trial court to have the warden at Eddyville served with a copy of an order of personal attendance in time for the warden to produce Reeves for the trial

Witnesses (KRS 421.230 et seq.) or the presence of a federal prisoner might be compelled by a writ of habeas corpus ad testificandum,

the following day. To have granted Spencer's motion at that late date would have required a continuance of the trial of the case.

■ When the trial court overruled the motion for an order for the personal appearance of Reeves, Spencer's counsel did not file a motion for a continuance under RCr 9.04. Had there been a motion for a continuance, the trial court clearly would have been presented with the question whether Spencer had exercised "due diligence" to secure the testimony of Reeves. Even in the absence of a motion for a continuance under RCr 9.04, the trial court properly considered whether Spencer exercised due diligence to produce Reeves as a witness by filing a timely motion for his personal appearance.

In holding that a motion for a writ of *habeas corpus ad testificandum* was untimely, the United States Court of Appeals for the District of Columbia in *Neufield v. United States, supra,* stated:

"But we think that even under this circumstance the issuance of the writ was discretionary, that the guarantee of the Sixth Amendment is not so absolute as to require the production of a witness despite an unseasonable application for the writ. For the due administration of justice there must be a limit to delay; and if the right to the writ for the production of a jailed witness were absolute in the sense that the writ must be issued and executed whenever demand is made, it would be within the power of an accused to compel a continuance by making a late demand. * * * the trial judge properly regarded the application for process against Waldron as unseasonable. An accused cannot omit to inform his lawyer during an extended period—in this case approximately eight weeks—before trial of the existence of a possible material witness and then successfully charge the trial judge with an abuse of discretion for refusing a demand for the production of

*Barber v. Page,* 390 U.S. 719 at 723–24, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

the witness not made until the moment the case is called. While in the usual course it would seem important to have present at the trial a confessed participant in the crime charged, we can not say that under the circumstances of the instant case the trial judge abused his discretion in denying the application for Waldron's production." 118 F.2d at 385. See also 97 C.J.S. *Witnesses* § 30 at 416–17.

In the present case, Spencer made no request for an order for the personal appearance of Reeves at the time the case was called and originally continued on February 23, 1976. There is nothing in the record to indicate that Spencer was unaware of Reeves, whereabouts at that time. Most important, the affidavit executed by Reeves which was attached to his motion was dated April 22, 1976, almost four weeks before the trial was scheduled to commence. Under these circumstances, we cannot say that the trial court abused its discretion in refusing to order the production of Reeves when the motion was made to the court too late to secure Reeves' attendance at the commencement of the trial.

## IMPEACHMENT BY EVIDENCE OF PRIOR FELONY CONVICTION

Ross and Spencer both testified on their own behalf at the trial of the case. Both men assert that prejudicial error was committed when the Commonwealth was permitted to impeach their testimony by evidence of prior felony convictions. In addition, Spencer's sister, Arthella Moore, testified as an alibi witness for Spencer, and the Commonwealth attempted to impeach her testimony by evidence of a prior felony conviction. Spencer asserts that the procedures followed by the Commonwealth in impeaching his sister were also prejudicially erroneous.

In each instance, the Commonwealth's attorney ignored the procedures set forth in *Cotton v. Commonwealth*, Ky., 454 S.W.2d 698 (1970), for impeachment of a witness by evidence of a prior felony conviction. The Commonwealth's Attorney did not seek a ruling on the admissibility of the prior felo-

ny convictions before undertaking to impeach the witnesses. Conceding that the procedures dictated by the *Cotton* case were not followed, the Commonwealth claims that the errors were not properly preserved. Thus, we must determine how error is to be preserved when there has been a violation of the *Cotton* procedures. This is the exact issue which was reserved by the court in *Bell v. Commonwealth*, Ky., 520 S.W.2d 316, 318, n.1 (1975).

In determining whether evidence of a prior felony conviction is admissible for purposes of impeachment, the *Cotton* case requires two determinations by the trial judge. First, the trial judge must determine whether there is a final judgment of conviction for a felony relevant to the issue of credibility. In the *Cotton* case, the court held that felony convictions are not relevant to the issue of credibility unless they rest on dishonest conduct. In discussing the *Cotton* rule, the court in *Harris v. Commonwealth*, Ky., 469 S.W.2d 68, 70 (1971), stated:

"However, if the previous convictions do not rest on dishonesty they may not be introduced in evidence at all and the defendant may not be asked about them. The prior felony is not introducible in evidence for the purpose of impeachment under any circumstance unless it is relevant to the issue of credibility."

The second aspect of the *Cotton* rule involves the trial judge's discretion to exclude evidence which is relevant to the issue of the witnesses' credibility.

Even if the evidence of the prior felony conviction is relevant, the trial judge in the exercise of discretion may exclude or limit the evidence if he determines that its prejudicial effect outweighs its probative value. In the *Cotton* case, the court stated:

"The exercise of discretion by the trial judge in this area should primarily consist of weighing the interest of society in the prosecution of criminal defendants to provide the trial jury with relevant evidence of the witness' untrustworthiness to be believed against the possible prejudice to the witness, particularly in the case of a

criminal defendant, in being convicted not of the crime for which he is charged but of some crime for which he has been convicted and punished on some prior occasion." 454 S.W.2d at 701.

The discretion of the trial judge to exclude evidence of prior convictions relevant to the issue of credibility has been described as being "limited" in scope. *Cotton v. Commonwealth, supra; Iles v. Commonwealth,* Ky., 476 S.W.2d 170, 172 (1972). The dual aspect of the *Cotton* rule was perhaps best summarized by the court in the *Bell* case:

> "*Cotton* specifically outlaws questioning as to any felonies other than those involving dishonesty, stealing or false swearing, and as to the latter it calls for a careful consideration of the probability of prejudice, and for the exercise by the trial court of discretion as to the *limiting* or even *prohibiting* the impeaching questions." (emphasis in original) 520 S.W.2d at 317.

In *Burnett v. Commonwealth,* Ky., 523 S.W.2d 229 at 231 (1975) the court re-emphasized that there should be a hearing or conference outside the presence of the jury prior to the introduction of any evidence of a prior conviction for purposes of impeachment.

■ When the procedures dictated by *Cotton* have not been followed, RCr 9.22 dictates that some contemporaneous objection be made in order to preserve the error. The defendant's trial counsel must not sit back and fail to take action if the Commonwealth's Attorney does not follow the *Cotton* procedures. *Cane v. Commonwealth,* Ky.App., 556 S.W.2d 902 (1977) 24 K.L.S. 8, pg. 8. If an objection is made, the sufficiency of the objection will depend upon which aspect of the *Cotton* rule is involved. Is the defendant's trial counsel asserting that the prior conviction is not relevant on the issue of credibility? Or, is the defendant's trial counsel requesting that the evidence be limited or prohibited in the exercise of the trial judge's discretion to exclude relevant, but highly prejudicial, evidence?

■ A prior conviction is not relevant to the issue of credibility unless it involved a felony based upon dishonesty. Relevancy is not shown if the prosecutor merely asks, "Have you ever been convicted of a felony?" A simple objection is sufficient to raise the issue of the relevancy of the prior conviction. The defendant is not required to establish that the prior conviction involved a felony not based on dishonesty. The burden is on the Commonwealth to establish that the prior conviction is relevant to the issue of credibility. Cf. *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir. 1976). On the other hand, if the prior conviction is relevant to the issue of credibility, the defendant should have the burden of persuading the trial judge that this relevant evidence should be excluded or limited. A simple objection will not be sufficient to establish that the trial court abused its discretion by admitting relevant evidence on the question of credibility. *Gordon v. United States,* 127 U.S.App.D.C. 343, 383 F.2d 936, 939 (1967); *Hood v. United States,* 125 U.S.App.D.C. 16, 365 F.2d 949 (1966). It is appropriate to note that the *Gordon* decision was cited and relied on by the Court in the *Cotton* decision.

■ Although applying a different standard, Rule 609 of the Federal Rules of Evidence presents a similar question respecting the procedure to be followed in introducing evidence of prior convictions for impeachment purposes. In commenting on Rule 609, Moore states:

> "Whoever is offering the impeaching evidence should have the burden of establishing that the proffered evidence has probative value; and how much. * * * The opposing party should have the burden of showing prejudice to himself and whether much or little." 10 *Moore's Federal Practice* § 609.14[3] (2d ed. 1976).

A general objection is sufficient if the evidence is not competent for any purpose. RCr 9.22. However, if the evidence is relevant and prima facie admissible, a specific objection should be made giving the reasons why the trial judge should exclude relevant evidence on the grounds of prejudice. Whether Ross and Spencer properly preserved the *Cotton* errors will be determined in accordance with the foregoing principles.

■ In the case of Ross, there was an objection when Ross was asked whether he had ever been convicted of a felony. A bench conference was held, but no record was made of that conference. Following the bench conference, the Commonwealth's Attorney was permitted to elicit from Ross, over objection from his counsel, that he had been convicted of a felony and was currently residing at Eddyville. There is nothing in the record to indicate the nature or date of the prior felony conviction. We conclude that Ross's trial counsel has properly preserved the question whether the prior conviction was relevant to the issue of Ross's credibility. However, there is nothing in the record to indicate that it would be an abuse of discretion to admit the evidence of prior conviction assuming that it was relevant to the issue of credibility.

■ When the Commonwealth's Attorney attempted to impeach Spencer, his counsel objected on the grounds that there had been no hearing in chambers as required by the *Cotton* decision. At a bench conference which was recorded, the Commonwealth's Attorney responded, "we all know what the answer is to start with. We know all about him." The trial judge overruled the objection stating into record at the bench, " * * * the court being sufficiently advised the defendant has been recently been convicted of armed assault with intent to rob in the Lee Circuit Court approximately two years ago." As the trial judge was the presiding judge of both the Estill Circuit Court and the Lee Circuit Court, it was not improper for the trial judge to take judicial notice of the records of his own court. *Howard v. Commonwealth*, 240 Ky. 307, 42 S.W.2d 335 (1931). *Cotton* does not require an evidentiary hearing in every case. As stated in the *Burnett* case, the *Cotton* determination can be made "in a hearing or conference held outside the presence of the jury." 523 S.W.2d at 231. A conviction of armed assault with intent to rob is relevant to the issue of Spencer's credibility. *Thomas v. Commonwealth*, Ky., 487 S.W.2d 954 (1972). There is nothing in the record to indicate that it was an abuse of discretion for the

trial court to admit the evidence of Spencer's previous conviction. With respect to the impeachment of Spencer, we conclude that the *Cotton* error was cured.

■ During cross-examination of Spencer's sister, Arthella Moore, the Commonwealth's Attorney was permitted over objection to establish that she had previously been convicted of a felony. Having elicited this fact, the Commonwealth's Attorney then engaged in the following colloquy:

"X16 Have you ever gone back to serve out the rest of your sentence?

A No, I haven't.

X17 That is where you are supposed to be right now, isn't it?

A When the Court of Appeals decides, yes."

If Mrs. Moore's prior felony conviction was on appeal and the mandate had not issued, it would be improper to use that conviction for purposes of impeachment. *Commonwealth v. Duvall*, Ky., 548 S.W.2d 832 (1977); *Foure v. Commonwealth*, 214 Ky. 620, 283 S.W. 958 (1926). At no time did the Commonwealth establish that Mrs. Moore's prior conviction was for a felony relevant to the issue of her credibility. We conclude that the objection by the trial counsel properly preserved the question of the relevancy of Mrs. Moore's prior conviction. However, there is no suggestion in the record of any facts which would have required the trial judge in the exercise of his discretion to exclude or limit the evidence of her prior conviction, assuming that it was relevant.

■ Even though the procedures followed in the trial court were erroneous, whether there was prejudicial error depends upon the exact nature of the prior felony convictions and, in the case of Mrs. Moore whether there was an appeal pending from her prior conviction. If Ross and Mrs. Spencer had previously been convicted of a felony involving dishonesty, stealing or false swearing within the *Cotton* rule, the evidence was relevant. If relevant, the admission of the evidence of the prior felony convictions would not be prejudicial. On

the other hand, if the prior conviction involved a crime not affecting credibility, the failure to follow the procedures outlined in the *Cotton* case was prejudicial. Under the circumstances, justice will best be served by vacating the judgments and remanding the cases to the circuit court for the purpose of determining the relevancy of the prior felony convictions as required by the *Cotton* case. Cf. *Francis v. Commonwealth,* Ky., 468 S.W.2d 287 (1971).

If upon remand, the trial court determines that Ross's prior felony conviction was for an offense which is not relevant on the issue of his credibility, then the trial court shall grant Ross a new trial; if the prior felony conviction would be admissible under the *Cotton* rule, the trial court shall reinstate the judgment of conviction. Likewise, if the trial court determines that Mrs. Moore's prior felony conviction would not be relevant under the *Cotton* rule, or that Mrs. Moore's conviction had been appealed and the mandate had not issued, then the trial court shall grant Spencer a new trial; otherwise the trial court shall reinstate Spencer's judgment of conviction. The trial court's decision following remand will be reviewable under the procedures outlined in *Gaston v. Commonwealth,* Ky., 545 S.W. 941 (1977).

Remand rather than reversal is a proper remedy when the only *Cotton* issue relates to the relevance of the prior conviction to the issue of credibility. In such cases, no discretion is vested in the trial court. A felony either is or is not based upon dishonesty. The determination of the relevancy question will not be influenced by the fact that it is made on remand rather than during the trial.

One further question must be answered. May the trial judge's discretion to exclude evidence of relevant convictions be invoked for the first time on remand? We hold that it cannot. The only practical time for the trial judge to exercise his discretion is during the trial itself. It is unrealistic and artificial to assume that the trial judge can be objective when his discretion is invoked for the first time on remand, or on a new

trial following a reversal on *Cotton* grounds. The defendant's trial counsel will usually be aware of the nature of the prior conviction. Therefore, the trial counsel should request a hearing or conference outside the presence of the jury if he believes the trial judge should exclude the evidence by the exercise of discretion. Likewise, if the trial counsel has any question respecting the nature of the prior conviction, he can learn the facts by requesting a determination of all *Cotton* issues out of the presence of the jury. The refusal of the trial judge to conduct a *Cotton* hearing or conference can be grounds for reversal. *Iles v. Commonwealth, supra.*

So that there can be no confusion on the part of attorneys, we emphasize again that prosecutors and other attorneys have a duty to comply with the *Cotton* decision. If the attorney injects evidence of a felony conviction before a jury without a prior *Cotton* determination outside of the presence of the jury, that attorney has made it difficult for the trial judge to be objective in exercising his discretion to admit or exclude the evidence. If the second aspect of the *Cotton* rule is preserved for appeal, such a violation of *Cotton* will be a factor in determining whether there has been an abuse of discretion in admitting the evidence of the prior conviction.

## ALLEGED MISCONDUCT OF COMMONWEALTH'S ATTORNEY DURING TRIAL AND CLOSING ARGUMENT

The Commonwealth contends that the appellants have failed to preserve any alleged error with respect to the Commonwealth's Attorney's closing argument or conduct during the course of the trial. This argument is based upon the failure of trial counsel to state the specific grounds for their objection to the argument or conduct of the Commonwealth's Attorney. In support of the argument that trial counsel must state the "specific grounds" for an objection the Commonwealth relies upon *Bell v. Commonwealth,* Ky., 473 S.W.2d 820 (1971). The *Bell* case does not so hold. The opinion in the *Bell* case does no more than

reiterate the requirement of RCr 9.22 that trial counsel must make known to the trial court "the action which he desires the court to take or his objection to the action of the court." The trial counsel must state his grounds for objection only on request of the trial court. RCr 9.22 is identical with its counterpart in the Rules of Civil Procedure, CR 46. The Kentucky rules differ from Rule 46 of the Federal Rules of Civil Procedure and Rule 51 of the Federal Rules of Criminal Procedure which require a statement of the grounds of an objection in all cases. In the absence of a request from the trial judge, the appellants did not waive their objections by failing to state the grounds for the objections. *Price v. Bates*, Ky., 320 S.W.2d 786 (1959).

However, there are more serious questions relating to the preservation of alleged error. There were a number of instances in which Spencer's trial counsel made an objection but there was no objection on behalf of Ross. Having made no objection, Ross cannot raise those questions on appeal even though they were properly preserved for Spencer's appeal. As stated in *Price v. Commonwealth*, Ky., 474 S.W.2d 348, 350 (1971):

> "Consolidated prosecutions are controlled by RCr 9.12 which states 'The procedure shall be the same as if the prosecution were under such single indictment or information.' Thus, where two or more defendants are being tried together, it is incumbent upon each party to timely make the court aware of his objection to any of the proceedings. This may be done on behalf of one of the parties or jointly on behalf of others, but the court must be informed of the position taken by a party or he cannot later complain. *Arnold v. Com.*, Ky., 433 S.W.2d 355 (1968); 88 C.J.S. Trial § 132, p. 266. Price failed to make his position known, therefore he did not take appropriate action to preserve this issue for appellate review. *Spainhoward v. Com.*, Ky., 447 S.W.2d 602 (1969)."

Therefore, certain objections will be considered only as they relate to the appeal by Spencer.

Furthermore, there are certain statements by the Commonwealth's Attorney to which there was no objection by either defendant at the trial. As to those matters, any objection was waived by failing to comply with RCr 9.22. We have reviewed the matters referred to in the appellants' brief, and this court concludes that there is no palpable error affecting the substantial rights of the appellants which would result in manifest injustice. CR 61.02 (as incorporated into the Rules of Criminal Procedure by RCr 13.04).

During his closing argument, the Commonwealth's Attorney commented that Spencer's sister, Mrs. Moore, should be in prison and that he did not know why she was out. This comment was completely irrelevant to the issues and had no place in the closing argument. However, whether the comment was prejudicial will depend upon the outcome of the *Cotton* hearing to be conducted by the trial court on remand. Standing alone, the comment does not justify reversal of Spencer's conviction or require a retrial. Later in his argument, the Commonwealth's Attorney stated, " * * * if you turn them loose they may finish the old boy off the next time." This argument is also improper, and the trial court should have sustained Spencer's counsel's objection. However, the comment does not require granting a new trial to Spencer. See *Clemons v. Commonwealth*, Ky., 462 S.W.2d 919 (1971). The trial court admonished the jury to be guided by the evidence rather than the Commonwealth's Attorney's argument which had gone outside of the evidence. The trial court cured any impropriety in that portion of the closing argument.

This court has also reviewed each of the additional objections made to the Commonwealth's Attorney's conduct during the trial of the case which had been raised on this appeal. We find no grounds for reversal. In some instances, the trial court sustained the objection and gave a strong admonition to the jury. In other instances, the trial court in effect sustained the objection by

having the question rephrased. In another instance, there was no answer to the alleged improper question. This court concludes that the allegedly improper questions propounded by the Commonwealth's Attorney do not require reversal in light of the trial court's rulings and admonitions given throughout the trial.

### RULING

The judgment in each appeal is vacated, and the cases are remanded to the circuit court for further proceedings as set forth in this opinion.

All concur.